**United States District Court**
**Western District of Texas**
**Austin Division**

| | | |
|---|---|---|
| KIRK JOHNSTON, | § | |
| | § | |
| PLAINTIFF | § | CAUSE NO. _____ |
| | § | |
| V. | § | |
| | § | |
| CHAD KROEGER, MICHAEL KROEGER, | § | |
| RYAN PEAKE, DANIEL ADAIR, WARNER | § | |
| MUSIC GROUP, ATLANTIC RECORDING | § | |
| CORP., ROADRUNNER RECORDS, INC., | § | |
| WARNER/CHAPPELL MUSIC, INC., AND | § | |
| LIVE NATION ENTERTAINMENT, INC. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Kirk Johnston ("Plaintiff" or "Johnston") hereby files this Original Complaint against Defendants Chad Kroeger, Michael Kroeger, Ryan Peake, Daniel Adair, Warner Music Group, Atlantic Recording Corporation, Roadrunner Records, Inc., Warner/Chappell Music, Inc., and Live Nation Entertainment. In support hereof, Johnston hereby states the following:

### Nature of the Case

1.     This is an action for copyright infringement damages and injunctive relief in violation of 17 U.S.C. §101, *et seq.*, arising from Defendants' unauthorized reproduction, distribution and public performance of the copyrighted musical composition *Rock Star* written by Plaintiff Kirk Johnston.

### Parties

2.     Kirk Johnston is an individual resident of Harris County, Texas.

3.     Chad Kroeger is an individual resident of Canada who performs music as part of a band known as "Nickelback" (collectively with Defendants Peake, M.Kroeger and Adair referred to as

the "Nickelback Defendants"). Kroeger is credited as a co-writer/co-composer of *Rockstar* and is a feature performer on the infringing sound recording *Rockstar* on Nickelback's Album *All the Right Reasons*. The Nickelback Defendants including Kroger have publicly performed the infringing work and/or authorized the reproduction, distribution and public performance of the infringing work.

4.    Ryan Peake is an individual resident of Canada who performs music as part of a band known as "Nickelback." Peake is credited as a co-writer/co-composer of *Rockstar* and is a feature performer on the infringing sound recording *Rockstar* on Nickelback's Album *All the Right Reasons*. The Nickelback Defendants including Peake have publicly performed the infringing work and/or authorized the reproduction, distribution and public performance of the infringing work.

5.    Michael Kroeger is an individual resident of Canada who performs music as part of a band known as "Nickelback." M.Kroeger is credited as a co-writer/co-composer of *Rockstar* and is a feature performer on the infringing sound recording *Rockstar* on Nickelback's Album *All the Right Reasons*. The Nickelback Defendants including M.Kroeger have publicly performed the infringing work and/or authorized the reproduction, distribution and public performance of the infringing work

6.    Daniel Adair is an individual resident of Canada who performs music as part of a band known as "Nickelback." Adair is credited as a co-writer/co-composer of *Rockstar* and is a feature performer on the infringing sound recording *Rockstar* on Nickelback's Album *All the Right Reasons*. The Nickelback Defendants including Adair have publicly performed the infringing work and/or authorized the reproduction, distribution and public performance of the infringing work.

7.      Warner Music Group ("WMG") is a Delaware corporation that maintains an office in New York City, New York. WMG engages in, among other things, the business of manufacturing, distributing and licensing of sound recordings. WMG has reproduced, distributed and authorized the public performance of the infringing work. WMG is authorized to do business in the state of Texas.

8.      Atlantic Recording Corporation ("Atlantic") is a record company engaged in the business of developing artists, and in the business of creating, manufacturing, selling, and distributing musical works compositions and musical sound recordings. Atlantic is organized and existing under the laws of the state of Delaware, with a principal place of business in New York City, New York. Atlantic is a subsidiary of WMG and is authorized to do business in the state of Texas.

9.      Roadrunner Records, Inc. ("Roadrunner") is a corporation organized and existing under the laws of the state of New York, with a principal place of business in New York City, New York. Roadrunner is a subsidiary of Atlantic (and therefore, WMG) and is authorized to do business in the state of Texas. Upon information and belief, Roadrunner Records distributes the infringing work by and through a distribution agreement between itself and Atlantic and/or WMG.

10.     Warner/Chappell Music, Inc. ("Warner/Chappell") is a global music publishing company that is involved in the acquisition of rights to, and licensing of, musical compositions (as opposed to recordings) from songwriters, composers or other rights holders. Warner/Chappell is organized and existing under the laws of the state of Delaware, with a principal place of business in Santa Monica, California. Warner/Chappell is a subsidiary of WMG and is authorized to do business in the state of Texas. Upon information and belief, Warner/Chappell is the owner of the

copyright for the Nickelback song "*Rockstar*," which administers the copy right on behalf of the Nickelback Defendants.

11.     Live Nation Entertainment, Inc. ("Live Nation") advertises, markets and sells its services in the state of Texas to individuals, businesses, and other vendors. Furthermore, on information and belief, Live Nation Entertainment has two offices in Texas. It also offers its services through a public-facing website, accessible to Texas residents and businesses, that is not merely passive. On information and belief, Live Nation has promoted and continues to promote live concerts for WMG and the Nickelback Defendants, including performance of the infringing Rockstar song.

### Jurisdiction and Venue

12.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1338(a) because this case arises under the Copyright Act and the Copyright Revision Act of 1976, 17 U.S.C. § 101 et. seq.

13.     Venue is proper in this district under 28 U.S.C. §1400(a) because the Defendants or their agents "may be found" in the Western District of Texas, i.e., because the Court has personal jurisdiction over Defendants in the Western District of Texas. Personal jurisdiction exists over each of the Defendants under the Texas long arm statute, Tex. Civ. Prac. & Rem. Code §17.042, because Defendants have directed their infringing activities and marketing of same to Texas residents, and because they have repeatedly and consistently placed the infringing work into the stream of commerce knowing that Texas residents would be able to purchase it during the time period for which damages are sought. Defendants have also performed the infringing work at least twenty (20) times in the state of Texas, including numerous occasions in this District, and therefore, have knowingly and intentionally benefitted from the availability of a particular state's market for their infringing work. Individually and collectively, Defendants' actions have resulted

in systematic and continuous contacts with the state of Texas such as to confer specific and/or general personal jurisdiction over Defendants in the Western District of Texas.

## Ownership of *Rock Star*

14.    Johnston is an accomplished guitarist and songwriter who performed original compositions with a band known as Snowblind Revival beginning in 1997 and through the early 2000s.   Unlike Nickelback's hard rock sound, Snowblind Revival would be considered an alternative rock band with more indie/eclectic roots.

15.    While he was a member of Snowblind Revival, Johnston wrote and created the musical composition *Rock Star* in 2001. Johnston's musical composition *Rock Star* contains copyrightable subject matter under the copyright laws of the United States. Johnston has also registered a copyright in the musical composition *Rock Star* with the United States Copyright Office, with an effective date of December 8, 2019, issued under certificate number PA 2-216-632. At all relevant times, Johnston has been the sole owner of the copyright.

16.    In the late 1990s and early 2000s, Snowblind Revival experienced some critical acclaim and commercial success. As an up and coming band during this time, Snowblind Revival met with the A&R (Artists and Repertoire) representatives of nearly every major recording label in the United States. As part of its pitch to get signed, Snowblind Revival presented their music to a broad variety of labels, including Universal Music Group, Columbia Records, Maverick Records, Atlantic Records, Arista Records, Sony Music Group and Warner Music Group. The general feedback from the executives from these labels was very positive about the band, but most particularly about Johnston's composition *Rock Star*. One executive described *Rock Star* as the band's most "radio friendly song"; another executive offered an opinion that it was the type of hit song that could launch a career.

17.     In 2000, Snowblind Revival performed in venues around the country, including but not limited to live shows in Los Angeles, CA, Austin, TX, Lexington, KY, Nashville, TN and New York City. Snowblind Revival also traveled to New York City in 2001 to perform at the Continental Ballroom and to introduce their music to the various labels. Prior to traveling to New York, Snowblind Revival recorded *Rock Star* and three other original songs on a mobile 12 track studio. The recordings were engineered by the band's drummer, Wes Korner, and a master disc was printed off the studio equipment in or about August 2001. From that master disc, 15 CDR's were burned using Johnston's home computer and sent to the various record labels with a press kit as well as showcase dates and times. WMG as well as other labels including Atlantic Records, Sony, Universal and Columbia, received a copy of Johnston's *Rockstar* during this time and through this process.

18.     As a result of Snowblind Revival's marketing efforts, including the distribution of *Rock Star* directly to the A&R representatives of Defendants Atlantic and WMG, Defendants had direct access to Johnston's musical composition *Rock Star*.

19.     Due to the contraction of the music industry after 9/11, Snowblind Revival was unsuccessful in their efforts to obtain a major recording label deal at this time. Although Snowblind Revival did not formally disband, the band took a long hiatus until approximately 2018, discussed in paragraph 29 below.

## Defendants' Infringement of *Rock Star*

20.     In January 2005, Defendants commercially released the musical composition and sound recording, *Rockstar* by the band Nickelback as part of its album *All the Right Reasons*. On information and belief, Defendants Chad Kroeger, Mike Kroeger, Ryan Peake and Daniel Adair are each credited as the composers/songwriters for *Rockstar*.

21.     Since its debut in 2005 and re-release in 2007, *All the Right Reasons* has achieved a fair degree of commercial success (if not critical scorn). As of December 2015, *All the Right Reasons* had sold nearly 8 million copies in the United States and 14.5 million copies worldwide. It is estimated that *All the Right Reasons* has generated in excess of $250,000,000 in revenue for Defendants.

22.     One of the significant reasons for the album's commercial success was *Rockstar*, which is the biggest selling single on the album. *Rockstar* has sold over 4.5 million copies and was one of the top selling songs of the first decade of this century. Documentary evidence reflects that Nickelback has performed *Rockstar* live in concert hundreds of times since its debut in 2005 (including at least 20 times in the state of Texas).

23.     A substantial amount of the music in *Rockstar* is copied from Johnston's original composition *Rock Star*. Specifically, substantial portions of the tempo, song form, melodic structure, harmonic structures, and lyrical themes were copied from Johnston's original work. Ironically, Nickelback's *Rockstar* even includes a lyrical reference to the common industry practice of using unknown songwriters to ghost write songs for popular bands, and then taking credit for such songs (*i.e.*, "Get washed-up singers writin' all *my* songs") (emphasis added).

24.     The music and lyrical themes of Nickelback's *Rockstar* are not the product of independent creation.

25.     The music and lyrical themes of Nickelback's *Rockstar* is substantially, strikingly similar to Johnston's *Rock Star*. The portions copied are both quantitatively and qualitatively substantial to the copyrightable elements of Johnston's *Rock Star*, individually and in combination.

26.     Defendants never sought or obtained permission from Plaintiff to use Johnston's *Rock Star* in creating, producing, recording, distributing, selling, broadcasting, or publicly performing *Rockstar*.

27.     Plaintiff never gave any of the Defendants permission, consent, or a license to use Johnston's *Rock Star* for any purpose, including but not limited to the creation of any derivative work based on Johnston's *Rock Star*.

28.     As alleged above, Defendants have licensed, reproduced, copied, distributed, sold, broadcast, publicly performed and/or authorized the reproduction, distribution and public performance of Nickelback's infringing composition, sound recording and audio-visual recording of *Rockstar*, and continue to infringe Johnston's *Rock Star*, in numerous ways including but not limited to the following:

(a)     Selling the album *All the Right Reasons* to the public through numerous online retailers and through retail stores throughout the country;

(b)     Providing a digital version of *Rockstar* to, among other services, iTunes, Apple Music, Amazon Music, Prime Music, Google Play Music, Spotify, Pandora, YouTube Music, Sirius XM, and other e-music providers, for purchase and/or subscription-based download and/or streaming by consumers; and

(c)     Performing *Rockstar* as part of the setlist for the upcoming *All The Right Reasons Tour* (celebrating the 15th anniversary of the *All The Right Reasons* album), scheduled to kick off June 19, 2020 in Raleigh, NC (with tour dates including Dallas, TX and Houston, TX on Sept. 3-4, 2020).

**Discovery Rule**

29.     In 2018, the living members of Snowblind Revival reunited and undertook to reproduce some of their songs, including Johnston's *Rock Star*. At this time, and for the first time, Plaintiff discovered that his original composition *Rock Star* was copied by Nickelback. Prior to 2018, Johnston had never heard Nickelback's *Rockstar* and was unaware of the similarities between the two songs.

30.     Accordingly, Plaintiff is entitled to damages dating back to Defendants' initial infringement in January 2005.

**Infringement Outside of the United States**

31.     Defendants stole and otherwise misappropriated Johnston's *Rock Star* in the United States, and ultimately exploited their infringement throughout the world.  Defendants' non-U.S. revenues relating to Nickelback's *Rockstar* stem directly from its domestic acts of copyright infringement, such that Defendants' global infringing sales violate the U.S. Copyright Act pursuant to the predicate act doctrine.

32.     Plaintiff Johnston wrote and created the musical composition *Rock Star* in the United States, and undertook all relevant activities to commercialize *Rock Star* within the United States. Defendants' infringement of *Rock Star* affected commerce within the United States.

33.     Defendants WMG, Atlantic Records, Roadrunner Records, Warner/Chappell, and Live Ntion L.P. are based in the United States, and, on information and belief, Nickelback has substantial contacts with the United States. The Copyright Act reaches Defendants' infringing acts, no matter where they are deemed to have been committed.

**First Cause of Action**

**Copyright Infringement, 17 U.S.C. §101 *et. seq.***

34.     Plaintiff incorporates by reference the allegations of paragraphs 1-33 herein.

35.     Defendants' reproduction, distribution, sale, and/or public performance of the infringing work, as well as the authorization of same, continues despite the fact that they have been placed on written notice of infringement. Such reproduction, copying, sale, distribution and public performance infringes on Plaintiff's exclusive rights under the Copyright Act.

36.     Defendants further infringed Plaintiff's copyrighted work by reproducing, distributing, and/or publicly performing the infringing work to the public outside of the United States, based on the predicate act of copyright infringement in the United States.

37.     Defendants' acts and conduct complained of herein constitute federal copyright infringement in violation of 17 U.S.C. § 501 et seq.

38.     Defendants acted with knowledge and/or reckless disregard of Plaintiff's rights such that their acts of copyright infringement as alleged above were, and continue to be, willful, intentional and malicious.

39.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages and will continue to suffer damages for their continuing infringement of same.

40.     Due to Defendants' infringing and unlawful acts, Plaintiffs have suffered general and special damages in an amount to be established at trial.

41.     Due to Defendants' infringing and unlawful acts, Defendants have obtained direct and indirect profits they otherwise would not have realized but for their infringement of the copyrighted work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly

and indirectly attributable to Defendants' infringement of the copyrighted work in an amount to be established at trial.

42.     To the extent allowable under law, Plaintiff also requests recovery of its reasonable and necessary attorneys' fees expended to pursue this cause of action against Defendants.

### Demand for Jury Trial

43.     Plaintiff requests a trial by jury on all claims and causes of action asserted in its Complaint against Defendants.

### Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff Kirk Johnston hereby prays that the Court enter judgment in his favor and against Defendants on all claims and causes of action asserted herein, as follows:

(1)     Judgment in favor of Plaintiff that Defendants have violated the Copyright Act for willfully infringing the copyrighted composition *Rock Star*;

(2)      Issuance of an award of monetary damages sufficient to compensate Plaintiff for the injuries suffered as a result of Defendant's wrongful conduct;

(4)     Issuance of an award of Defendant's profits and unjust enrichment realized from their infringement and other wrongful conduct;

(5)     All such other and further relief as to which they may be entitled, including but not limited to plaintiff's costs and reasonable attorneys' fees recoverable under law.

**Dated: May 8, 2020**

Respectfully Submitted,


LAW OFFICE OF SESHA KALAPATAPU


By: *s/ Sesha Kalapatapu*
     Sesha Kalapatapu
2929 Allen Parkway, Suite 200
Houston, TX 77019
Telephone:  832.398.1771
Fax:  713.574.4719
Email:  *sesha@sktexaslaw.com*


JONES WALKER LLP


By: *s/ Jeffrey J. Phillips*
     Jeffrey J. Phillips
881 Main Street, Suite 2900
Houston, TX 77002
Telephone:  713.437.1864
Fax:  713.437.1810
Email:  jphillips@joneswalker.com