# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| KIRK JOHNSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO. 20-CV-00497-RP |
| v. | § | |
| | § | |
| CHAD KROEGER, MICHAEL KROEGER, | § | |
| RYAN PEAKE, DANIEL ADAIR, WARNER | § | |
| MUSIC GROUP, ATLANTIC RECORDING | § | |
| CORP., ROADRUNNER RECORDS, INC., | § | |
| WARNER/CHAPPELL MUSIC, INC., AND | § | |
| LIVE NATION ENTERTAINMENT, INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS CHAD KROEGER, MICHAEL KROEGER, RYAN PEAKE, DANIEL ADAIR, ROADRUNNER RECORDS, INC., AND WARNER CHAPPELL MUSIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6)

Defendants Chad Kroeger, Michael Kroeger, Ryan Peake, Daniel Adair (collectively, "Nickelback"), Roadrunner Records, Inc. ("Roadrunner Records"), and Warner Chappell Music, Inc. (erroneously sued as Warner/Chappell Music, Inc.) (collectively, "Defendants") file this Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants ask the Court to dismiss, with prejudice, Plaintiff Kirk Johnston's ("Plaintiff's") complaint for copyright infringement of Plaintiff's musical composition.

12596164.1

## <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

I.     INTRODUCTION AND BACKGROUND .................................................................. 1

II.    STANDARD OF REVIEW ...................................................................................... 2

III.   ARGUMENT AND AUTHORITIES ...................................................................... 3

    A.     As a threshold matter, Plaintiff has not sufficiently pled access. ........................... 4

        Alleged meetings with unnamed A&R representatives and presentations to
           labels. ........................................................................................................ 6

        Alleged unsolicited CDs. ...................................................................................... 7

        Alleged Performances. .......................................................................................... 7

    B.     Plaintiff cannot state a copyright claim because, fundamentally, the works at
        issue are not substantially similar to an ordinary observer. ................................... 8

        Lyrically, Plaintiff's Work and Defendants' Work are not substantially
           similar. ...................................................................................................... 10

        Musically, Plaintiff's Work and Defendants' Work are not substantially
           similar. ...................................................................................................... 13

IV.    CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
  722 F.2d 988 (2d Cir. 1983)......................................................................................4

*Armour v. Knowles*,
  512 F.3d 147 (5th Cir. 2007) ...............................................................................4, 7, 9

*Arnett v. Jackson*,
  2017 WL 3493606 (E.D.N.C. Aug. 14, 2017) ............................................................6

*Arnstein v. Porter*,
  154 F.2d 464 (2d Cir. 1946)...............................................................................9, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................3

*Batiste v. Lewis*,
  2020 WL 5640589 (5th Cir. Sept. 22, 2020) ....................................................4, 6, 8, 9

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007).................................................................................................3, 4

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
  394 F.3d 285 (5th Cir. 2004) .....................................................................................3

*Creations Unlimited, Inc. v. McCain*,
  112 F.3d 814 (5th Cir. 1997) ..............................................................................9, 10

*Dimmie v. Carey*,
  88 F. Supp. 2d 142 (S.D.N.Y. 2000).......................................................................5, 7

*Eng'g Dynamic, Inc. v. Structural Software, Inc.*,
  26 F.3d 1335 (5th Cir. 1994) ....................................................................................12

*Feldman v. Twentieth Century Fox Film Corp.*,
  723 F. Supp. 2d 357 (D. Mass. 2010) ........................................................................8

*Ferguson v. Nat'l Broad. Co., Inc.*,
  584 F.2d 111 (5th Cir. 1978) ..................................................................................5, 7

*Golan v. Holder*,
  132 S. Ct. 873 (2012)..................................................................................................1

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Gottwald v. Jones*,
2011 WL 4344038 (S.D.N.Y. Sept. 12, 2011)........................................................9, 10, 13, 14

*Guzman v. Hacienda Records & Rec. Studio, Inc.*,
2014 WL 6982331 (S.D. Tex. Dec. 9, 2014) ........................................................................5, 8

*Hobbs v. John*,
722 F.3d 1089 (7th Cir. 2013) ...............................................................................................13

*Huffman v. Burnt Puppy Music*,
2017 WL 11046666 (W.D. Tex. Feb. 1, 2017) .......................................................................11

*Jorgensen v. Epic/Sony Records*,
351 F.3d 46 (2d Cir. 2003)..............................................................................................4, 5, 7

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
12 F.3d 527 (5th Cir. 1994) .....................................................................................................9

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016) ............................................................................................4, 5, 6

*Martinez v. McGraw*,
2009 WL 2447611 (M.D. Tenn. Aug. 10, 2009) ..................................................................4, 5

*Nelson v. PRN Prods., Inc.*,
873 F.2d 1141 (8th Cir. 1989) ...............................................................................................10

*Peel & Co., Inc. v. Rug Mkt.*,
238 F.3d 391 (5th Cir. 2001) ...................................................................................................9

*Pendleton v. Acuff-Rose Publ'ns, Inc.*,
605 F. Supp. 477 (M.D. Tenn. 1984)......................................................................................11

*Positive Black Talk Inc. v. Cash Money Records, Inc.*,
394 F.3d 357 (5th Cir. 2004) ........................................................................................3, 4, 8, 11

*Pyatt v. Raymond*,
2011 WL 2078531 (S.D.N.Y. May 19, 2011) ..................................................................11, 15

*R. Ready Prods., Inc. v. Cantrell*,
85 F. Supp. 2d 672 (S.D. Tex. 2000) .......................................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Randolph v. Dimension Films,*
634 F. Supp. 2d 779 (S.D. Tex. 2009) ...............................................................9, 10

*Rucker v. Harlequin Enterprises, Ltd.,*
2013 WL 707922 (S.D. Tex. Feb. 26, 2013) .....................................................3, 10

*Sony Corp. of Am. v. Univ. City Studios, Inc.,*
464 U.S. 417 (1984)................................................................................................1

*Staggs v. West,*
2009 WL 2579665 (D. Md. Aug. 17, 2009) ...........................................10, 11, 15

*Steele v. Turner Broad. Sys., Inc.,*
646 F. Supp. 2d 185 (D. Mass. 2009) ...................................................................12

*Vallery v. Am. Girl, L.L.C.,*
697 F. App'x 821 (5th Cir. 2017) ..........................................................................8

*Williams v. Crichton,*
84 F.3d 581 (2d Cir. 1996)....................................................................................12

*Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n,*
2014 WL 12631652 (C.D. Cal. June 9, 2014) ......................................................11

*Zella v. E.W. Scripps Co.,*
529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................3, 10

### STATUTES

17 U.S.C. § 102........................................................................................................2, 12

### OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 3, 8

Fed. R. Evid. 201(b)(2) ..............................................................................................11

## I.    INTRODUCTION AND BACKGROUND

1.      On a motion to dismiss a music copyright claim, the Court has a duty to compare the works at issue from the vantage point of an ordinary observer.  If the works do not sound substantially similar to a layperson, no copyright infringement claim lies.  Likewise, there can be no claim for copyright infringement where any conceivable lyrical similarities between two works arise from well-tread themes and tropes, which are not protected by copyright.  Nor can short phrases and titles, which are not copyrightable, give rise to an infringement lawsuit.

2.      In assuming the role of an ordinary listener and analyzing the alleged substantial similarity of songs on a motion to dismiss, the Court serves a vital gatekeeping function:  By disposing of meritless claims at the pleading stage, the Court has the opportunity to quash lawsuits that deter creativity and innovation.  This furthers the Copyright Act's greater purpose of "promoting" the creation and "public availability of literature, music, and the other arts."  *Sony Corp. of Am. v. Univ. City Studios, Inc*., 464 U.S. 417, 432 (1984) (citation omitted).  *Accord, Golan v. Holder*, 132 S. Ct. 873, 889 (2012).

3.      Plaintiff Kirk Johnston's case is a paradigmatic example of a lawsuit that should be dismissed on its face, with prejudice.  Plaintiff, a member of an obscure "alternative rock band" called Snowblind Revival, alleges that he wrote a musical composition titled *Rock Star* ("Plaintiff's Work") in 2001.  Complaint ¶¶ 14-15.  In 2005, the Canadian rock band Nickelback released a song that was coincidentally titled *Rockstar* ("Defendants' Work").  *Id.* ¶ 20.  Not surprisingly, both works touch upon the commonplace theme of imagining being a rock star.  Any conceivable similarity ends there.  Plaintiff is hardly the first artist to write a song about imagining being a rock star; the notion that he can prevent others from doing so is ludicrous.

4.      Plaintiff has not alleged that Nickelback (or any person with a connection to Nickelback) had a reasonable opportunity to hear Plaintiff's Work, let alone copy it.  He claims to have purportedly sent out a handful of demo CDs to unspecified persons at major record labels and performed in a few U.S. cities (at unspecified venues).  Complaint ¶¶ 16-17.  That does not amount

to the access legally required to state a claim for copyright infringement.  And ironically, while Plaintiff's claim is premised on the notion that Nickelback must have heard *his* obscure song, he nevertheless claims it was not until *2018* that he first heard Defendants' Work, which he alleges "has sold over 4.5 million copies and was one of the top selling songs of the first decade of this century."  *Id.* ¶¶ 22, 29.  It was not until December 2019 that Plaintiff first registered a copyright in his musical composition.  *Id.* ¶ 15.

5.      Critically and fatally, although Plaintiff baldly claims that "substantial portions of the tempo, song form, melodic structure, harmonic structures, and lyrical themes [in Defendants' Work] were copied from Johnston's original work[,]" (Complaint ¶ 23), the two works are neither lyrically nor musically similar – let alone substantially similar.  The lyrics share only superficial similarities in unprotectable themes, which are expressed quite differently in the two songs.  On a motion to dismiss, where, as here, Plaintiff has alleged infringement of a musical composition, the Court may compare a *sound recording* embodying Plaintiff's composition with a sound recording of Defendants' Work[1] and decide whether an ordinary observer could find the two works substantially similar.  Here, the Court will be able to determine that the two songs do not sound alike to a lay person.

6.      Because Plaintiff's Work and Defendants' Work are not substantially similar in protectable expression, amendment would be futile, and the Court should dismiss Plaintiff's complaint for copyright infringement without leave to amend.

## II.      STANDARD OF REVIEW

7.      To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[1] For any given song, there can be both (1) a musical composition – *i.e.*, the notes and lyrics (commonly documented on sheet music), and (2) a sound recording – *i.e.*, the recorded performance of a composition.  Each is separately copyrightable.  *See* 17 U.S.C. § 102.  Here, Plaintiff has pled that he holds a copyright in a musical composition, which Defendants allegedly infringed through the exploitation of the musical composition, sound recording, and audio-visual recording of Nickelback's *Rockstar*.  *See* Complaint ¶¶ 15, 28.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  To state a valid claim, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  The court need not accept as true "a legal conclusion couched as a factual allegation[,]" and "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (internal citation and quotations omitted).

8.      When considering a motion to dismiss, a court may take judicial notice of "documents [such as copies of works] which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'"  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007) (internal citation omitted).  Moreover, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  "Works referenced in the pleading and critical to the claims are properly considered on a Rule 12(b)(6) motion without converting it to one for summary judgment."  *Rucker v. Harlequin Enterprises, Ltd.*, 2013 WL 707922, at *1, n.1 (S.D. Tex. Feb. 26, 2013).  Here, Defendants are providing a sound recording embodying Plaintiffs' Work (for purposes of this motion only) and a sound recording of Defendants' Work. *See* Exhibits 1-2.  Additionally, a side-by-side comparison of the lyrics is included for the Court's convenience in Appendix A.

## III.     ARGUMENT AND AUTHORITIES

9.      "To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original."  *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  Actionable copying, in turn, requires (A) factual copying – which may be inferred from "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and

(2) probative similarity" – and (B) substantial similarity.  *Id.* at 368.  Here, Plaintiff has not and cannot sufficiently plead access.  Moreover, on their face, Plaintiff's Work and Defendants' Work are not similar – let alone substantially similar – and thus amendment would be futile.  As such, the Court should dismiss the complaint, at this pleading stage, with prejudice.

### A.   As a threshold matter, Plaintiff has not sufficiently pled access.

10.     In the copyright context, access means that "the person who created the allegedly infringing work had a *reasonable* opportunity to view the copyrighted work before creating the infringing work.  Indeed, "[a] bare possibility will not suffice; neither will a finding of access based on speculation or conjecture.  Reasoning that amounts to nothing more than a tortuous chain of hypothetical transmittals is insufficient to infer access." *Armour v. Knowles*, 512 F.3d 147, 152-53 (5th Cir. 2007) (emphasis added) (citation and internal quotation marks omitted).  At the pleading stage, a plaintiff's access allegations "must be enough to raise a right to relief above the speculative level" to satisfy the requirements of *Twombly*.  *Martinez v. McGraw*, 2009 WL 2447611, at *5 (M.D. Tenn. Aug. 10, 2009), quoting *Twombly*, 550 U.S. at 555.

11.     As the Fifth Circuit recently recognized, two common theories of access are a "chain of events" linking a plaintiff's music to the defendants or the "widespread dissemination" of a plaintiff's music.  *Batiste v. Lewis*, 2020 WL 5640589, at *4 (5th Cir. Sept. 22, 2020).[2]  Here, neither theory is (nor can be) sufficiently alleged.

12.     For a chain of events theory to be viable, it must be more than a mere hypothesis.  *See Armour*, 512 F.3d at 155 (rejecting access theory that would have required multiple "leaps of logic," including "T–Bone and Beyoncé were *in fact* good friends"; "T–Bone and Beyoncé regularly communicated"; "T–Bone received and listened to the demo tape"; "T–Bone gave the tape to Beyoncé"; and "Beyoncé received the tape and had the opportunity to listen to it")

---

[2] While the Fifth Circuit has not expressly adopted either theory, it considered both in *Batiste*. 2020 WL 5640589, at *4-6.  Other Circuits analyze these two avenues of access.  *See, e.g., Loomis v. Cornish*, 836 F.3d 991, 995-98 (9th Cir. 2016)); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51-56 (2d Cir. 2003).

(emphasis in original); *Martinez*, 2009 WL 2447611, at *5-6 (granting motion to dismiss copyright infringement claim where plaintiff merely pled a "tenuous string of facts" by which defendants allegedly had access to plaintiff's song).

13.     One particular type of "chain of events" theory that courts consistently have rejected is "bare corporate receipt" – *i.e.*, a plaintiff's claim that he sent a copy of his work to a corporate defendant purportedly connected to the allegedly infringing work, with nothing more.  "Bare corporate receipt of [plaintiff's] work, without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 53 (2d Cir. 2003).  This is particularly true of unsolicited mailings, like the ones alleged by Plaintiff here.  *See Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 112-13 (5th Cir. 1978) (finding no access where plaintiff merely sent her composition to four individuals (Guy Lombardo, Dinah Shore, Jerri Green, and Don Cherry) and two companies (Broadcast Music Incorporated and Mills Publishing Company)); *Jorgensen*, 351 F.3d at 52 (where plaintiff sent out a multitude of unsolicited tapes of his song, Second Circuit held plaintiff's "mass-mailing allegation was [] properly rejected by the District Court as legally insufficient proof of access"); *Dimmie v. Carey*, 88 F. Supp. 2d 142, 146 (S.D.N.Y. 2000) (rejecting access theory based on plaintiff mailing an unsolicited tape of her song to record company: "plaintiff's 'best case' scenario of (alleged) unsolicited mailing does not establish 'access'").  *See also Loomis v. Cornish*, 836 F.3d 991, 995-96 (9th Cir. 2016) (collecting bare corporate receipt cases and finding no access: "it is not reasonably possible that the paths of the infringer and the infringed work crossed.") (citation and internal quotations omitted).

14.     Likewise, courts have consistently rejected access based on purported widespread dissemination where a plaintiff's work only reached a limited audience, as is the case here.  *See Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014 WL 6982331, at *2, 5-6 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031 (5th Cir. 2015) (finding neither widespread dissemination nor access where plaintiff's song was performed for many years "at dance halls, concerts, and weddings in

Corpus Christi and surrounding towns" and "did not achieve popularity outside of the Tejano music scene"); *Batiste*, 2020 WL 5640589, at *5 (finding no access under either a widespread dissemination or chain of events theory where plaintiff's record "show[ed] meager sales in only a handful of local stores[,]" and defendants' performance near a store where plaintiff's records were sold created only a "bare possibility of access"); *Loomis*, 836 F.3d at 997-98 (plaintiff failed to establish access or widespread dissemination despite plaintiff's song having won awards and plaintiff's prominence in the Santa Barbara, California music scene). *See also Arnett v. Jackson*, 2017 WL 3493606, at *3 (E.D.N.C. Aug. 14, 2017) (granting motion to dismiss plaintiff's claims, with prejudice, when plaintiff failed to allege that subject work was a commercial success and made no estimate of the amount of copies sold).

15.     Applying these principles, Plaintiff has failed to plead that Nickelback had a reasonable opportunity to hear a sound recording or performance of Plaintiff's Work before creating Defendants' Work under either a chain of events or widespread dissemination theory:

### *Alleged meetings with unnamed A&R representatives and presentations to labels.*

16.     Plaintiff claims that "Snowblind Revival met with the A&R (Artists and Repertoire) representatives of nearly every major recording label in the United States."  Complaint ¶ 16. Snowblind Revival allegedly "presented their music to a broad variety of labels, including Universal Music Group, Columbia Records, Maverick Records, Atlantic Records, Arista Records, Sony Music Group and Warner Music Group."  *Id.*  Plaintiff claims that unnamed "executives" gave positive feedback on Plaintiff's Work.  *Id.*

17.     These allegations fail to plead a chain of events sufficient to allege access.  As an initial matter, Plaintiff does not allege that he met with or presented to any of the members of Nickelback, who created Defendants' Work, nor any of their representatives.  And he does not claim that he met with A&R representatives of Roadrunner Records, the label that Plaintiff acknowledges distributes Defendants' Work.[3]  Complaint ¶ 9.  Nor does he specify any A&R representatives or

---

[3] Plaintiff voluntarily dismissed Warner Music Group and Atlantic Recording Corporation, which did not distribute Defendants' Work.  *See* Dkt. No. 9.

record label personnel by name.  And Plaintiff does not – because he cannot – posit any scenario by which the aforementioned alleged meetings and presentations led Defendants to gain access to Plaintiffs' Work.  Indeed, unlike the alleged chains of events in other cases, Plaintiff has not even tried to posit the steps by which his work could have reached Nickelback (or any of the other Defendants).  *Compare Armour*, 512 F.3d at 155 (rejecting T–Bone/Beyoncé hypothesis).

### *Alleged unsolicited CDs.*

18.     Plaintiff also asserts that Snowblind Revival created a CD containing a sound recording of Plaintiff's Work (as well as three of the band's other songs) and mailed out 15 copies to record labels including Warner Music Group, Atlantic Records, Sony, Universal and Columbia.  Complaint ¶ 17.

19.     This allegation of purported access also falls hopelessly short.  Again, Plaintiff does not allege that he sent an unsolicited CD to *Nickelback* or to Roadrunner Records, which distributed Defendants' Work.  Complaint ¶¶ 9, 17.  Nor does he specify any person to whom he sent the unsolicited CD, instead merely listing the names of some of the most famous record labels in the world.  *Id.* ¶ 17.  (He concedes he only sent out 15 copies.  *Id.*)  Nor does he plead that a representative of any such record label ever acknowledged receiving the CD.  Again, Plaintiff has failed to sufficiently allege a chain of events connecting the unsolicited CDs to Defendants and his bare corporate receipt theory fails.  *See Ferguson*, 584 F.2d at 112-13; *Jorgensen*, 351 F.3d at 52-53; *Dimmie* 88 F. Supp. 2d at 146.  In fact, Plaintiff's theory is even more tenuous than those that were rejected in *Jorgensen* and *Dimmie* because Plaintiff mailed fewer unsolicited recordings, and he did not even mail them to the relevant corporate entity, Roadrunner Records.

### *Alleged Performances.*

20.     Finally, Plaintiff vaguely alleges that in the years 2000 and 2001 his band "performed in venues around the country, including but not limited to live shows in Los Angeles, CA, Austin, TX, Lexington, KY, Nashville, TN and New York City."  Complaint ¶ 17.

21.     Yet again, Plaintiff's access allegations are glaringly legally deficient:  He does not specify the number of shows or the size of their audiences, and he names only one specific venue (the Continental Ballroom in New York City).  Complaint ¶ 17.  Nor does he plead that there was broad publicity for the shows, or even that Plaintiff's Work was performed at them.  *Id.*  And critically, he does not allege that the members of Nickelback attended Snowblind Revival's shows in the aforementioned cities, nor any facts to suggest they conceivably could have – to the contrary, he alleges that they are residents of Canada.  *Id.* ¶¶ 3-6.  Consequently, Plaintiff has not, and cannot, allege access via widespread dissemination of Plaintiff's Work.  *See Guzman*, 2014 WL 6982331, at \*5-6, *Batiste* 2020 WL 5640589, at \*5.

22.     Plaintiff's bare allegations of access not only are deficient, but they also reveal that it is inconceivable that Nickelback could *reasonably* have had the opportunity to hear Plaintiff's Work.  Therefore, the Court should dismiss Plaintiff's complaint for copyright infringement with prejudice.  *See Vallery v. Am. Girl, L.L.C.*, 697 F. App'x 821, 825 (5th Cir. 2017) (district court properly dismissed and denied amendment where plaintiff failed to plead access and could not allege "striking similarities"); *Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 366 (D. Mass. 2010) (dismissing copyright infringement claim pursuant to Rule 12(b)(6) because plaintiff "failed to allege facts sufficient to demonstrate reasonable opportunity of access").

**B.     Plaintiff cannot state a copyright claim because, fundamentally, the works at issue are not substantially similar to an ordinary observer.**

23.     Plaintiff could never state a claim for copyright infringement because Plaintiff's Work and Defendants' Work are not substantially similar.  This is an independently sufficient ground for dismissal, and amendment would be futile.

24.     Even assuming *arguendo* that Plaintiff could sufficiently allege access (which he cannot), to maintain a claim for copyright infringement he must also establish substantial similarity between the works.  *Positive Black Talk*, 394 F.3d at 367-68.  Without access, Plaintiff must clear the higher bar of showing that Plaintiff's Work and Defendants' Work are "strikingly similar" – *i.e.*, the

similarities between the two works could *only* be explained by actual copying.  *Batiste*, 2020 WL 5640589, at *4, 6; *Armour*, 512 F.3d at 152, n.3.

25.     In the Fifth Circuit, "[t]o determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'"  *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).  This analysis is also known as the "ordinary observer" test:  "Two works are substantially similar where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same.'"  *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000) (quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)).  "Under the ordinary observer or audience test used in making this factual determination, a layman must detect piracy without any aid or suggestion or critical analysis by others.  The reaction of the public to the matter should be spontaneous and immediate."  *Peel & Co., Inc. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001) (citation and internal quotations omitted).

26.     In music cases, courts applying the "ordinary observer" test at the pleading stage analyze whether "defendant took from plaintiffs works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such ... music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff."  *Gottwald v. Jones*, 2011 WL 4344038, at *4 (S.D.N.Y. Sept. 12, 2011) (citation and internal quotation marks omitted); *see also Arnstein v. Porter*, 154 F.2d 464, 472-73 (2d Cir. 1946).  "When a work contains both protectable and unprotectable elements, the court must apply the '"more discerning" ordinary observer' test" and filter out the unprotectable material from its comparison.  *R. Ready Prods.*, 85 F. Supp. 2d at 683; *see Kepner-Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 534-35 (5th Cir. 1994).

27.     The Court may determine the lack of similarity between two works on a motion to dismiss; in doing so it performs a critical gatekeeping function.  *See Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787-88 (S.D. Tex. 2009) ("Complaints alleging copyright infringement … can be

decided as a matter of law.").  The Court may take judicial notice of the works at issue (*Zella*, 529 F. Supp. 2d at 1128-29) and perform the side-by-side comparison required in the Fifth Circuit under *Creations Unlimited*, 112 F.3d at 816.  *See Randolph*, 634 F. Supp. 2d at 787-88; *Rucker*, 2013 WL 707922, at *4-10 (comparing works at issue and granting motion to dismiss, with prejudice).  *See also, e.g., Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989) (upholding dismissal with prejudice of claim alleging copyright infringement of plaintiff's song lyrics by the artist Prince; noting that "[t]he District Court had before it ... complete copies of both [plaintiff's] song and Prince's and was therefore in proper position to apply the substantial similarity test"); *Gottwald v. Jones*, 2011 WL 4344038, at *4-5 (S.D.N.Y. Sept. 12, 2011) (applying "ordinary lay hearer" analysis and finding no lyrical or musical similarity and dismissing counterclaim with prejudice); *Staggs v. West*, 2009 WL 2579665 at *3 (D. Md. Aug. 17, 2009) (comparing music and lyrics of songs at issue and granting motion to dismiss).

28.     From the perspective of a layman, *i.e.*, an ordinary listener, Plaintiff's Work and Defendants' Work are neither lyrically nor musically similar – let alone substantially similar.  (And under no circumstances are they *strikingly* similar – the threshold when there is no viable theory of access.)  Since "[o]nly the works themselves are probative in a substantial similarity analysis[,]" there is no amendment that could cure this fundamental defect.  *Randolph*, 634 F. Supp. 2d at 788.

### *Lyrically, Plaintiff's Work and Defendants' Work are not substantially similar.*

29.     There is no lyrical similarity between Plaintiff's Work and Defendants' Work that could give rise to a copyright infringement claim.  As noted above, Johnston pled only that the two works share lyrical themes, *i.e.*, he did not plead any specific similarities between the lyrics.  Complaint ¶¶ 23-25.  Examining the lyrics themselves, the only even *conceivable* commonalities are unprotectable elements, which must be filtered out under the "more discerning ordinary observer" test.

30.     The sole lyrical similarity between the two songs is the short phrase "be a rock star," which Johnston obviously cannot own.  "Courts have consistently held that common words and clichéd

language are not subject to copyright protection." *Pendleton v. Acuff-Rose Publ'ns, Inc.*, 605 F. Supp. 477, 486 (M.D. Tenn. 1984); *see also Pyatt v. Raymond*, 2011 WL 2078531, at *8 (S.D.N.Y. May 19, 2011) (granting motion to dismiss where only lyrical similarity was use of the unprotectable, common phrase "caught up" in the title and throughout both songs); *Staggs,* 2009 WL 2579665, at *3 ("common words or phrases – such as 'good life' … simply are not copyrightable"); *see also Huffman v. Burnt Puppy Music*, 2017 WL 11046666, at *4 (W.D. Tex. Feb. 1, 2017) (Pitman, J.) ("the alleged fact that both Plaintiff and some defendants used the same common words in the titles of their works does not allow the plausible inference that independent creation was unlikely.").[4]

31.     Tellingly, the crux of Johnston's infringement claim is that Plaintiff's Work and Defendants' Work share "lyrical themes."  Complaint ¶¶ 23-25.  But, as a matter of law, the *theme* of imagining being a rock star is a commonplace *idea*, which is not protectable by copyright.  *See Pyatt*, 2011 WL 2078531 at *7 ("While both songs (like millions of others) share the theme of relationships between men and women, this theme is an idea that is not copyrightable.").  Indeed there are myriad other songs that *pre-date* Plaintiff's Work about imagining being a rock star.[5]

32.     Thus, it is not surprising that both songs include lyrics about being rich, going to parties, riding on a tour bus, jet planes, and hanging out with celebrities.  These elements are *scenes a*

---

[4] Nor could the fact that Plaintiff's Work is titled *Rock Star* and Defendants' Work is titled *Rockstar* give rise to a copyright infringement claim.  *See, e.g., Positive Black Talk*, 394 F.3d at 374, n. 14 ("[Plaintiff] also concedes that song titles are not copyrightable and therefore could not be considered by the jury in the substantial similarity determination.").

[5] *See, e.g., So you want to be a rock 'n' roll star* (1966) by The Byrds; *Rock 'n' roll singer* (1975) by AC/DC; *Rock n' Roll band* (1976) by Boston; *Wanna be a rock 'n' roll star* (1977) by Eddie Money; *Rock 'n' roll star* (1984) by REO Speedwagon; *Rock 'n' roll to the rescue* (1986) by The Beach Boys; *Rock star* (2000) by Everclear.  *See* Exhibits 3-9 (printouts from the Copyright Public Catalog of the United States Copyright Office website).  In ruling on a motion to dismiss, a court may take judicial notice of facts "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Courts routinely take judicial notice of printouts from the U.S. Copyright Office website.  *See, e.g., Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n*, 2014 WL 12631652, at *2 (C.D. Cal. June 9, 2014) (reasoning, "[c]ourts can take judicial notice of documents available on government websites"; taking judicial notice of printouts from the Copyright Office website, and collecting cases).

*faire*, which are not protected by copyright, and thus must be excluded from comparison under the "more discerning ordinary observer" analysis.  17 U.S.C. § 102(b); *Steele v. Turner Broad. Sys., Inc.*, 646 F. Supp. 2d 185, 192 (D. Mass. 2009) ("[Plaintiff's] Song's references to Fenway Park and Yawkey Way are classic *scene a faire*; they are stock scenes that flow from the idea of baseball. … [Plaintiff] does not enjoy a monopoly over the use of those images simply because he references them in a copyrighted song.").  *See also, e.g.*, *Eng'g Dynamic, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994); *Williams v. Crichton*, 84 F.3d 581, 587-88 (2d Cir. 1996).

33.     Therefore, it is legally inconsequential that Plaintiff's Work includes the lyric "Gonna ride the tour bus" and the Defendants' Work includes the line, "I want a new tour bus full of old guitars".  "Tour buses" are a common form of transportation for "rock stars," and therefore, constitute a *scene a faire* of a song about imagining being a rock star – they must be excluded from the substantial similarity analysis under the "more discerning ordinary observer" test.  Nor are these references to "tour buses" particularly similar – Plaintiff's Work merely describes riding a tour bus and makes no mention of guitars, while Defendants' Work contemplates ownership of a tour bus and old guitars.

34.     Likewise, hanging out with celebrities is an unprotectable *scene a faire*, which must be excluded from the comparison of the two works.  Moreover, this unprotectable *idea* is expressed differently in the two songs:  Plaintiff's Work includes the line, "Gonna hang out at Hollywood parties with Matthew McConaughey," whereas Defendants' Work has the decidedly distinct lyric, "And we'll hang out in the coolest bars in the VIP with the movie stars."

35.     And the songs diverge further in their discussion of jet planes – yet another trope of being a rock star:  Plaintiff's Work includes the lyric "Gonna ride the tour bus, Because I *don't like* jet planes" (emphasis added), whereas the would-be rock star in Defendants' Work says, "I'll need a credit card that's got no limit, And a big black jet with a bathroom in it."  Again, the reference to a jet plane is not protectable – nor is its expression remotely similar in the two works.

36.     Upon closer analysis, the lyrical themes of the two works are quite different:  Plaintiff's Work contains a hopeful wish list of the things the singer would do if he were a rock star, including being friends with Robert Plant and Jimmy Page and buying the Dallas Cowboys.  Defendants' Work, by contrast, is more cynical and highlights the darker side of rock-n-roll stardom, such as eating disorders, drug use, objectifying women, and squandering one's fortune.  *See Hobbs v. John*, 722 F.3d 1089, 1095 (7th Cir. 2013) (affirming grant of motion to dismiss copyright claim regarding two love songs where "allegedly similar elements are *expressed* differently in [the songs at issue]" and "the remaining similar elements are rudimentary, common-place, standard, or unavoidable in popular love songs").

37.     Under the "more discerning ordinary observer" test, the lyrics of the two works contain no protectable similarities.  Plaintiff's claim must be dismissed.

### Musically, Plaintiff's Work and Defendants' Work are not substantially similar.

38.     Critically, although Plaintiff generally claims that "substantial portions of the tempo, song form, melodic structure, harmonic structures, and lyrical themes [in Defendants' Work] were copied from Johnston's original work[,]" (Complaint ¶ 23), the Court need not analyze the musicological elements of the works at issue to decide Defendants' motion to dismiss.  Rather, the Court must merely assume the role of an ordinary listener to determine whether the two songs sound substantially similar – in other words, whether "[Defendants] took from [Plaintiff's Work] so much of what is pleasing to the ears of lay listeners".  *Gottwald*, 2011 WL 4344038, at *4.  This framework dates back to the seminal *Arnstein v. Porter* case, in which the Second Circuit reasoned, "The proper criterion … is not an analytic or other comparison of the respective musical compositions as they appear on paper or in the judgment of trained musicians.  The plaintiff's legally protected interest is not, as such, his reputation as a musician but his interest in the potential financial returns from his compositions which derive from the lay public's approbation of his efforts."  154 F.2d at 472-73.  Thus, the Court needs no special expertise to analyze substantial similarity between the musical works.

39.     Here, while Plaintiff's claim pertains exclusively to his musical composition (*i.e.,* the musical notes and lyrics), and not to the sound recording embodying the musical composition (hereinafter "Plaintiff's Recording"), for purposes of this motion, the Court may compare the works at issue by simply listening to Plaintiff's Recording and the sound recording of Defendants' Work.

40.     The ordinary listener will conclude that Plaintiff's Work (as embodied in Plaintiff's Recording) and Defendants' Work sound nothing alike.  Plaintiff's Recording has a steady, driving guitar beat, whereas Defendants' Work does not and is obviously slower.  The two songs are not in the same key; Plaintiff's Work is in a major key, whereas Defendants' Work is in both major and minor keys.  Further, the styles of the two works are different.  Plaintiff acknowledges that his band Snowblind Revival and Nickelback play different genres of music: "Unlike Nickelback's hard rock sound, Snowblind Revival would be considered an alternative rock band with more indie/eclectic roots."  Complaint ¶ 14.  And most importantly, the melodies of Plaintiff's Work and Defendants' Work sound nothing alike.

41.     Courts have granted motions to dismiss music copyright infringement claims in analogous circumstances.  For example, in *Gottwald v. Jones*, where counterclaimants alleged that the hit song *Tik Tok* infringed their obscure song *My Slushy*, the Southern District of New York compared the sound recordings embodying the musical compositions at issue and dismissed the copyright counterclaim.  2011 WL 4344038, at *6.  The court found, "The music of the two works is not at all similar. … [The allegedly infringed work] is in the major key and has an unmistakably brighter feel and tone, colored by its use of background chords performed on acoustic guitar.  In stark contrast, [the allegedly infringing work] has a much darker feel and tone (reflecting use of the minor), more related to dance or 'dance-pop' music.  *The two 'melodies' … sound nothing alike.*"  *Id.* at *5 (emphasis added).  The court thus concluded, "Since no average lay observer would recognize ['Tik Tok'] as having been appropriated from ['My Slushy'], the My Slushy Parties' counterclaim must be dismissed."  *Id.* (citation and internal quotation marks omitted).

42.     Likewise, in *Pyatt v. Raymond,* the court applied the ordinary observer test and concluded, "the music on the two recordings [] is entirely dissimilar."  2011 WL 2078531 at *9.  The court observed that plaintiff's song "takes strong influence from Jamaican dancehall and hip hop" whereas defendants' song "is R&B with unmistakable Motown influences."  *Id.*  The court also noted that "[defendants'] song has a fast, steady beat when compared to [defendants'] song, which has a slower, more languid beat.  And the musical motifs are extremely dissimilar."  *Id.  See also Staggs*, 2009 WL 2579665, at *3 ("in evaluating the melodies of the two songs, an ordinary listener – the Court in this case – would quickly determine that the melodies of the songs are not similar.  In fact, the Court was unable to hear any portions of the songs that contained similar melodies.").

43.     Applying the same ordinary listener analysis here, Plaintiff's Work (as embodied in Plaintiff's Recording) and Defendants' Work do not sound substantially similar to an ordinary listener and, as such, Plaintiff's claim must be dismissed.

## IV.     CONCLUSION

For these reasons, Plaintiff has failed to state a claim upon which relief may be granted against Defendants.  No amendment could cure the fatal flaws in Plaintiff's claim.  Therefore, Defendants respectfully request that the Court grant this motion, dismiss Plaintiff's copyright infringement claim against Defendants, in its entirety, with prejudice, and grant all further relief to which Defendants are justly entitled.

**Dated: October 22, 2020**

**Respectfully Submitted,**

**MITCHELL SILBERBERG & KNUPP LLP**

By: /s/David A. Steinberg
       David A. Steinberg
       Emily F. Evitt
       2049 Century Park East, 18th Floor
       Los Angeles, CA 90067
       Tel. 310.312.2000
       Email: *das@msk.com; efe@msk.com*
       **Counsel for Defendants**

**BAKER DONELSON BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

By: /s/ Kenneth E. McKay
       Kenneth E. McKay
       Texas State Bar No. 13690835
       1301 McKinney St.
       Houston, Texas 77010
       Tel. 713.286.7179 Fax: 713.583.4603
       Email: *kmckay@bakerdonelson.com*
       **Counsel for Defendants**

**APPENDIX A**

| *Rock Star* by Snowblind Revival | *Rockstar* by Nickelback |
|---|---|
| Gonna be a rock star someday<br>Gonna ride the tour bus<br>Because I don't like jet planes<br>Gonna make lots of money<br>Live life in the fast lane<br>Gonna be a rock star someday<br><br>Gonna be a rock star someday<br>Gonna have lots of friends like Robert Plant and Jimmy Page<br>Gonna make my family proud<br>Gonna sing a good song, gonna sing it loud<br>Gonna be a rock star someday<br><br>(scat singing and guitar solo)<br><br>Gonna be a rock star someday<br>Gonna hang out at Hollywood parties with Matthew McConaughey<br>Might buy the Cowboys<br>And that's how I'll spend my Sundays<br>Gonna be a rock star someday<br><br>Gonna be a rock star someday<br>Gonna ride the tour bus<br>Because I don't like jet planes<br>Gonna make lots of money<br>Live life in the fast lane<br>Gonna be a rock star someday<br><br>Here we go, (scat singing)<br><br>Gonna be a rock star someday | I'm through with standin' in lines to clubs I'll never get in<br>It's like the bottom of the ninth and I'm never gonna win<br>This life hasn't turned out<br>Quite the way I want it to be<br>(Tell me what you want)<br><br>I want a brand new house on an episode of Cribs<br>And a bathroom I can play baseball in<br>And a king size tub<br>Big enough for ten plus me<br>(Yeah, so what you need?)<br><br>I'll need a credit card that's got no limit<br>And a big black jet with a bathroom in it<br>Gonna join the mile high club<br>At thirty-seven thousand feet<br>(Been there, done that)<br><br>I want a new tour bus full of old guitars<br>My own star on Hollywood Boulevard<br>Somewhere between Cher<br>And James Dean is fine for me<br>(So how you gonna do it?)<br><br><br>I'm gonna trade this life<br>For fortune and fame<br>I'd even cut my hair<br>And change my name<br><br>'Cause we all just wanna be big rockstars<br>And live in hilltop houses, drivin' fifteen cars<br>The girls come easy and the drugs come cheap<br>We'll all stay skinny 'cause we just won't eat<br><br>And we'll hang out in the coolest bars<br>In the VIP with the movie stars<br>Every good gold digger's gonna wind up there |

Every Playboy bunny with her bleach blond hair

And well, hey I wanna be a rockstar
Hey hey I wanna be a rockstar

I wanna be great like Elvis without the tassels
Hire eight body guards that love to beat up assholes
Sign a couple autographs
So I can eat my meals for free
(I'll have the quesadilla, ha, ha)

I'm gonna dress my ass with the latest fashion
Get a front door key to the Playboy mansion
Gonna date a centerfold that loves
To blow my money for me
(So how you gonna do it?)

I'm gonna trade this life
For fortune and fame
I'd even cut my hair
And change my name

'Cause we all just wanna be big rockstars
And live in hilltop houses, drivin' fifteen cars
The girls come easy and the drugs come cheap
We'll all stay skinny 'cause we just won't eat

And we'll hang out in the coolest bars
In the VIP with the movie stars
Every good gold digger's gonna wind up there
Every Playboy bunny with her bleach blond hair

And we'll hide out in the private rooms
With the latest dictionary of today's who's who
They'll get you anything with that evil smile
Everybody's got a drug dealer on speed dial

Well, hey I wanna be a rockstar

|  | I'm gonna sing those songs that offend the censors<br>Gonna pop my pills from a Pez dispenser<br>Get washed-up singers writin' all my songs<br>Lipsync 'em every night so I don't get 'em wrong<br><br><br>Well, we all just wanna be big rockstars<br>And live in hilltop houses, drivin' fifteen cars<br>The girls come easy and the drugs come cheap<br>We'll all stay skinny 'cause we just won't eat<br><br>And we'll hang out in the coolest bars<br>In the VIP with the movie stars<br>Every good gold digger's gonna wind up there<br>Every Playboy bunny with her bleach blond hair<br><br>And we'll hide out in the private rooms<br>With the latest dictionary of today's who's who<br>They'll get you anything with that evil smile<br>Everybody's got a drug dealer on speed dial<br><br>Well,  hey  hey  I  wanna  be  a  rockstar<br><br>Hey hey I wanna be a rockstar |
|--|--|

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2020, the foregoing document was served via the Court's CM/ECF system and FedEx in accordance with the Federal Rules of Civil Procedure on the following counsel:

***COUNSEL FOR PLAINTIFF KIRK JOHNSTON***

LAW OFFICE OF SESHA KALAPATAPU
Sesha Kalapatapu
2929 Allen Parkway, Suite 200
Houston, TX 77019
Telephone: 832.398.1771
Fax: 713.574.4719
Email: sesha@sktexaslaw.com

JONES WALKER LLP
Jeffrey J. Phillips
881 Main Street, Suite 2900
Houston, TX 77002
Telephone: 713.437.1864
Fax: 713.437.1810
Email: jphillips@joneswalker.com

***COUNSEL FOR LIVE NATION ENTERTAINMENT, INC***.

FOLEY & LARDNER LLP
Geoffrey H. Bracken
Michaela G. Bissett
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Fax: (713) 276-5555
E-mails: gbracken@foley.com;
mbissett@foley.com

/s/David A. Steinberg
David A. Steinberg