# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| KIRK JOHNSTON, | § | |
| | § | |
| PLAINTIFF | § | NO. 20-CV-00497-RP |
| | § | |
| V. | § | |
| | § | |
| CHAD KROEGER, MICHAEL KROEGER, | § | |
| RYAN PEAKE, DANIEL ADAIR, WARNER | § | |
| MUSIC GROUP, ATLANTIC RECORDING | § | |
| CORP., ROADRUNNER RECORDS, INC., | § | |
| WARNER/CHAPPELL MUSIC, INC., AND | § | |
| LIVE NATION ENTERTAINMENT, INC. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## ALL DEFENDANTS' RULE 12 MOTIONS TO DISMISS

Plaintiff Kirk Johnston ("Plaintiff") hereby files this Response in Opposition to the Rule 12(b)(6) filed by defendants Chad Kroeger, Michael Kroeger, Ryan Peake and Daniel Adair (collectively, "Nickelback" or the "Nickelback Defendants"), defendants Warner Chappell Music, Inc. and Roadrunner Records, Inc. (the "Warner Defendants") and Defendant Live Nation Entertainment, Inc. ("Live Nation."

# TABLE OF CONTENTS

INTRODUCTION                                                                          -1-

BACKGROUND                                                                           -1-

SUMMARY OF THE ARGUMENT                                                              -3-

ARGUMENT AND AUTHORITIES                                                             -4-

    A.    Applicable Legal Standards for Copyright Infringement Cases    -4-

    B.    Applicable Legal Standards for Factual Copying    4

    C.    Plaintiff Has Sufficiently Pled Factual Copying.    -6-

        1.    Allegations of Access.    -6-

        2.    Allegations of Probative Similarity    -7-

        3.    Defendants' Cited Cases Do Not Apply    -8-

    4.    Dismissal with Prejudice is not the Appropriate Remedy.    -10-

    D.    Plaintiff Has Sufficiently Pled Substantial Similarity.    -11-

        1.    Protected versus Unprotected Elements    -11-

        2.    Substantial Similarity    -13-

        3.    Comparison and evidence of Substantial Similarity    -15-

CONCLUSION                                                                           -17-

# TABLE OF AUTHORITIES

*Arista Records LLC v. Greubel,* 453 F. Supp. 2d 961, 965 (N.D. Tex. 2006)    -4,12-

*Armour v. Knowles*, 512 F.3d 147, 155 (5th Cir. 2007)    -9-

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)    -4,6-

*Batiste v. Lewis*, 2020 WL 5640589, at *4 (5th Cir. Sept. 22, 2020)    -8-

*Batiste v. Najm*, 28 F. Supp. 3d 595, 615 (E.D. La. 2014)    -14-

*Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987)    -13-

*Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003)    -5-

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992)    -12-

*Calhoun v. Tony Villa* Cause No. 18-20080 (5th Cir. 2019)    -4-

*Dimmie v. Carey*, 88 F. Supp. 2d 142, 146 (S.D.N.Y. 2000)    -9-

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991)    -12-

*Feldman v. Twentieth Century Fox Film Corp.*, 723 F.Supp.2d 357 (D. Mass 2010)    -10-

*Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 112-13 (5th Cir. 1978)    -9-

*Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014 WL 6982331, at *2, 5-6    -9-
(S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031 (5th Cir. 2015)

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002)    -11-

*Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 56 (2d Cir.2003)    -5,9-

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,    -4-
677 F.2d 1045, 1050 (5th Cir. 1982)

*Kepner-Tregoe v. Leadership Software, Inc.*, 12 F.3d 527, 534-35 (5th Cir. 1994)    -14-

*Loomis v. Cornish*, 836 F.3d 991, 995-98 (9th Cir. 2016)    -9-

*Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)    -4-

*Matter of Life Partners Holdings, Inc.* 926 F.3d 103 (5th Cir. 2019)    -11-

*Peel & Co. v. The Rug Mkt.,* 238 F.3d 391, 394 (5th Cir. 2001)      -5,8-

*Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 367, 370 n.9      -4,5,7,8-
(5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick,*
559 U.S. 154 (2010).

*R Ready Prods. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000)      -14-

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)      -13-

*Straus v. DVC Worldwide, Inc.,* 484 F. Supp. 2d 620, 635 (S.D. Tex. 2007)      -7-

*Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 512 (2002)      -4-

*Swirsky v. Carey,* 376 F.3d 841, 844-45 (9th Cir.2004)      -5-

*Thomas v. Chevron U.S.A., Inc.,* 832 F.3d 586, 590 (5th Cir. 2016)      -11-

*Thompson v. Goetzmann,* 337 F.3d 489, 494-95 (5th Cir. 2003)      -4-

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000)      -12-

*Tienshan v. C.C.A. Int'l (N.J.), Inc.,* 895 F.Supp. 651, 656 (S.D.N.Y.1995)      -5-

*Tisi v. Patrick*, 97 F. Supp. 2d 539, 548-49 (S.D.N.Y. 2000)      -14-

*Williams v. Bridgeport Music, Inc.*, 2014 U.S. Dist. LEXIS 199374      -11,14-
       at **9-12 (C.D. Cal., Jan. 28, 2015)

*Williams v. Gaye*, 895 F.3d 1106, 1120 (9th Cir. 2018)      -13-

## INTRODUCTION

This is a music copyright case. In response to a thorough, well-pled complaint that more than adequately informs all parties of the claims being asserted against them, Defendants filed summary judgment motions under the guise of Rule 12(b)(6). The prevailing issue is whether the Court should voluntarily conduct a summary judgment-level analysis of Plaintiff's Original Complaint before Johnston even has an opportunity to conduct discovery or present meaningful evidence in support of his claims. Plaintiff's Original Complaint is not conclusory; it is detailed and clearly states the basis for Johnston's allegations of infringement. To the extent that any allegations require clarification and expansion, leave to amend would be the appropriate remedy as opposed to outright dismissal. All Defendants' Rule 12(b)(6) motions to dismiss should be denied, and the case should proceed on the merits.

## BACKGROUND

Johnston is an accomplished guitarist and songwriter who performed original compositions with a band known as Snowblind Revival beginning in 1997 and through the early 2000s. Orig. Compl. at 14. While he was a member of Snowblind Revival, Johnston wrote and created the musical composition *Rock Star* in 2001. Orig. Compl. at 15. Johnston's musical composition *Rock Star* contains copyrightable subject matter under the copyright laws of the United States. *Id.* Johnston has also registered a copyright in the musical composition *Rock Star* with the United States Copyright Office, with an effective date of December 8, 2019, issued under certificate number PA 2-216-632. At all relevant times, Johnston has been the sole owner of the copyright. *Id.*

The Original Complaint alleges that Johnston and Snowblind Revival performed his original compositions, including *Rock Star*, in venues around the country, including but not

limited to live shows in Los Angeles, CA, Austin, TX, Lexington, KY, Nashville, TN and New York City. Orig. Compl. at 17. During this same time period, Snowblind Revival recorded *Rock Star* and three other original songs on a mobile 12 track studio. *Id.* From a master disc that was printed in 2001, 15 CDR's were burned using Johnston's home computer and sent to executives at various record labels with a press kit as well as showcase dates and times. *Id.* A handful of A/R (Artists & Repertoire) representatives at certain labels including but not limited to Warner Music Group, Atlantic Records and Universal, physically received and listened to copies of Johnston's *Rock Star* during this time and through this process.

Based on the aforementioned facts – <u>which are not the entirety of facts that Plaintiff could have pled regarding his communications and marketing efforts for his music</u> – Johnston alleges that Defendants had direct access to Johnston's musical composition *Rock Star*. Orig. Compl. at 18. Johnston further alleges that there are probative and substantial similarities between the Nickelback Defendants' musical composition *Rockstar* and Johnston's original composition *Rock Star*. Specifically, the Original Complaint alleges that "substantial portions of the tempo, song form, melodic structure, harmonic structures, and lyrical themes were copied from Johnston's original work." *Id.* at 23. Johnston further alleges that the "the music and lyrical themes of Nickelback's *Rockstar* are not the product of independent creation," and certain components are "substantially, strikingly similar to Johnston's *Rock Star*. The portions copied are both quantitatively and qualitatively substantial to the copyrightable elements of Johnston's *Rock Star*, individually and in combination." *Id.* at 24-25.

On the basis of his specific allegations and claims regarding actual, substantial copying by the Defendants of his copyrighted work, Johnston asserts a claim for copyright infringement under 17 U.S.C. §101 *et. seq.*

## SUMMARY OF THE ARGUMENT

Defendants' motions to dismiss for failure to state a claim are, in fact, motions for summary judgment under the cover of pleading deficiency assertions. Defendants are not only asking the Court to engage in a premature substantive analysis of Johnston's claims, but are also insisting that Johnston show evidentiary proof supporting his allegations – all before Johnston has a meaningful opportunity to conduct discovery.

There is no heightened pleading requirement for copyright infringement cases, and one should not be imposed on Plaintiff. Johnston has pled specific facts regarding his assertion of actual copying, both in terms of direct access to his copyrighted work and probative similarity to the Defendants' infringing work. Johnston has also pled substantial similarity in a manner consistent with his obligations under Federal Rules of Civil Procedure 8 and 12. The assertions rise above the level of "mere speculation," and Johnston should be permitted to proceed on the merits of the case.

The lion's share of cases cited in Defendants' motions to dismiss occur at or beyond the summary judgment level, where a plaintiff is held to a different standard of evidentiary proof and reasonable inferences are not made for the benefit of one party or the other. The few cited cases supporting dismissal at the Rule 12 stage of proceedings typically involve pro se parties or outrageous and/or impossible allegations which cannot be rehabilitated by amendment. Essentially, Defendants' cases do not support the relief sought in this case, dismissal with prejudice, before Defendants are required even to answer the suit.

Finally and to the extent that the Court deems Johnston's pleading to be insufficient in any material aspect, Johnston respectfully requests the opportunity to amend his complaint before dismissal.

## ARGUMENT AND AUTHORITIES

### A.     Applicable Legal Standards for Copyright Infringement Cases

Rule 12(b)(6) "motions to dismiss for failure to state a claim are 'disfavored in the law and rarely granted.'" *Calhoun v. Tony Villa* Cause No. 18-20080 (5th Cir. 2019) (quoting *Thompson v. Goetzmann,* 337 F.3d 489, 494-95 (5th Cir. 2003)); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

Texas federal courts recognize that a "complaint pleading a copyright infringement claim must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8." *Arista Records LLC v. Greubel,* 453 F. Supp. 2d 961, 965 (N.D. Tex. 2006) (internal citations omitted); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)(citing Fed. R. Civ. P. 8); *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 512 (2002). "The simplified notice-pleading standard relies on liberal discovery rules and summary-judgment motions to define the disputed facts and issues and dispose of meritless claims." *Arista Records*, 453 F.Supp. 2d at 965 (citing *Swierkiewicz,* 534 U.S. at 512).

### B.     Applicable Legal Standards for Factual Copying

Defendants contend that Johnston "has not and cannot" plead the issue of access to his copyrighted work, and therefore his complaint should be dismissed. To reach this conclusion, Defendants argue an incomplete legal standard and cite a host of cases resolved on *summary judgment*, not pre-discovery Rule 12 grounds.

An action for copyright infringement requires the plaintiff to show that "(1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 367 (5th Cir.

2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010). To satisfy the copying element, a plaintiff must plead and prove "(1) factual copying and (2) substantial similarity." *Id*.

Factual copying "can be proven by direct or circumstantial evidence." *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003). "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Peel & Co. v. The Rug Mkt.,* 238 F.3d 391, 394 (5th Cir. 2001). "Access" means that the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work." *Positive Black Talk*, 394 F.3d at 370. (internal citations omitted) "'Probative similarity,' a lower bar than 'substantial similarity,' means that the works, 'when compared as a whole, are adequately similar to establish appropriation.' *Id.*

In *Positive Black Talk*, the Fifth Circuit recognized that other circuit courts have adopted a "sliding scale" or inverse relationship between access and probative similarity in order to find factual copying: "[C]ourts have held that a plaintiff who shows a high degree of similarity may satisfy the factual copying requirement with a lesser showing of access, and, conversely, a plaintiff who shows a greater degree of access may satisfy the factual copying element with a lesser degree of probative similarity." *See Positive Black Talk*, 394 F.3d at 370 (citing *Swirsky v. Carey,* 376 F.3d 841, 844-45 (9th Cir.2004) ("Where a high degree of access is shown, we require a lower standard of proof of [probative] similarity."); *see also Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 56 (2d Cir.2003) ("There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required."); *Tienshan v. C.C.A. Int'l (N.J.), Inc.,* 895 F.Supp. 651, 656 (S.D.N.Y.1995) ("[G]iven

that access has been conceded, the level of probative similarity necessary to show physical copying is diminished")).

## C.   **Plaintiff Has Sufficiently Pled Factual Copying.**

For purposes of a Rule 12 motion, Johnston has sufficiently pled factual copying. Johnston has pled a combination of access and probative similarity, which, if accepted as true, states a claim for factual copying "that is plausible on its face." *Ashcroft*, 556 U.S. at 678.

### 1.   **Allegations of Access**

The Original Complaint alleges that Johnston and Snowblind Revival performed his original compositions, including *Rock Star*, in venues around the country, and that that Snowblind Revival recorded *Rock Star* and distributed it to specific record labels with a press kit as well as showcase dates and times. Orig. Compl. at 17.  Labels that received the copyrighted work included parent corporations of Roadrunner Records, including Universal Records.[1]

To be clear, the Original Complaint alleges enough facts to put the Defendants on notice of the claims asserted against them; but the Original Complaint does not contain the sum total of all facts regarding Johnston's marketing efforts. For example, Defendants falsely assume that the dissemination of Snowblind Revival's music as referenced in the Original Complaint was unsolicited. Nothing in the complaint suggests or implies the Johnston's theory of access is based on unsolicited distribution of his music. To the contrary, Johnston can, and is prepared to if

---

[1] Defendants focus on the dismissal of Warner Music Group and Atlantic Records, which were dismissed on the representation that they do not distribute the music at issue. However, Nickelback's label, Roadrunner Records, was owned by Universal Music Group during the relevant time period 2001 to 2006. Plaintiff has specifically plead that Universal had access to Johnston's original composition *Rock Star*, from which an inference could be drawn that it was provided to the songwriters of *Rockstar*, whether it be staff writers for Roadrunner Records or the Nickelback individual parties. *See* Foley, Stephen, *Warner Buys Heavy Metal Label for $73m*, www.independent.co.uk, Dec. 19, 2006 1:51 p.m, at the URL: *https://www.independent.co.uk/news/business/news/warner-buys-heavy-metal-label-for-73m-429249.html.*

necessary, allege specific names of A&R representatives from the various music labels (including, but not limited to, Universal Music Group, Columbia Records, and Atlantic Records) with whom he had direct interactions and received positive feedback regarding his music, his shows, Snowblind Revival and *Rock Star* in particular. Johnson can identify specific individuals who attended showcases, and who requested and received the aforementioned CDRs containing *Rock Star*.

Defendants are correct that at the present time, Johnston cannot "connect the dots" from the record label representatives with whom he interacted and Nickelback's final work product that is alleged to have been copied. But the law recognizes that an ordinary Plaintiff cannot possibly know this level of specificity regarding a large record label's internal processes prior to discovery, so it does not require such detail at the initial pleading stage. Johnston has pled facts, which, if true, show that music labels affiliated with Defendants had direct access to his work at the time he produced it. Combined with Nickelback's lyrical admission in *Rockstar* to other songwriters contributing to their music ("Getting washed up singers writing all my songs"), Johnston has pled facts giving rise to an inference of a "reasonable probability of access" sufficient to survive Rule 12 analysis.

This is particularly true in the context of Johnston's allegations of probative similarity, discussed below.

### 2.    Allegations of Probative Similarity

Knowing that the probative similarity prong does not favor them, Defendants simply ignore it. Defendants' approach is contrary to the law of this circuit.

"In evaluating probative similarity, a court should compare the works in their entirety, including both protectible and unprotectible elements." *Straus v. DVC Worldwide, Inc.,* 484 F.

Supp. 2d 620, 635 (S.D. Tex. 2007) (citing *Positive Black Talk,* 394 F.3d at 370 n.9). As the

Fifth Circuit explained in *Positive Black Talk,*

> [t]his is appropriate because although the plaintiff must ultimately establish
> infringement by showing that the defendant copied a substantial amount of protectable
> elements, (i.e., meet the "substantial similarity" standard), the fact that non-protectable
> elements were copied, although not a basis for liability, can be probative of whether
> protected elements were copied (i.e., help establish probative similarity).

*Positive Black Talk,* 394 F.3d at 370 n.9.

The Original Complaint alleges that "substantial portions of the tempo, song form,

melodic structure, harmonic structures, and lyrical themes were copied from Johnston's original

work." *Id.* at 23. Johnston further alleges that the "the music and lyrical themes of Nickelback's

*Rockstar* are not the product of independent creation," and are "substantially, strikingly similar

to Johnston's *Rock Star*. The portions copied are both quantitatively and qualitatively substantial

to the copyrightable elements of Johnston's *Rock Star*, individually and in combination." *Id.* at

24-25. Under *Positive Black Talk*, whether some of the copied elements are not protectable is not

relevant to probative similarity – the allegations are sufficient for Rule 12 purposes.

In sum, Plaintiff asserts more than sufficient contentions of *factual copying* (access +

probative similarity) to survive Rule 12 pleading requirements. *See Peel*, 238 F.3d at 397

(reversing dismissal of copyright infringement claim because "reasonable minds — particularly

minds of reasonable laymen — could differ as to whether [the works at issue] are probatively

similar").

### 3. <u>Defendants' Cited Cases Do Not Apply.</u>

Defendants' motion to dismiss imposes a higher burden on Plaintiffs than pleading

requirements under either Rule 8 or 12. Virtually all of Defendants' cited cases on the issue of

access involve grants of motions for summary judgment. In these cases, the plaintiffs were

tasked with marshalling their evidence in support of their allegations, and dismissals were

granted because the respective plaintiffs were unable to survive summary judgment because they could not produce sufficient evidence to raise a "genuine issue of material fact." *See Batiste v. Lewis*, 2020 WL 5640589, at *4 (5th Cir. Sept. 22, 2020) (noting that "to survive summary judgment on [factual copying], Batiste had to raise a genuine dispute as to either a combination of access and probative similarity or, absent proof of access, striking similarity"); *Loomis v. Cornish*, 836 F.3d 991, 995-98 (9th Cir. 2016) ("The district court granted the Defendants' motion for summary judgment, concluding that Loomis did not put forth any potentially admissible evidence to establish that the Domino songwriters had access to Bright Red Chords. We affirm."); *Armour v. Knowles*, 512 F.3d 147, 155 (5th Cir. 2007) (affirming judgment because the Plaintiff had "not presented enough evidence to establish a genuine issue of material fact"); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 53 (2d Cir. 2003) (affirming the district court's summary judgment ruling that "Jorgensen failed to raise a triable issue of access"); *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 112-13 (5th Cir. 1978) (sole issue raised on appeal is whether the trial court correctly granted defendant's motion for summary judgment, and finding that Plaintiff offered no evidence of similarity); *Dimmie v. Carey*, 88 F. Supp. 2d 142, 146 (S.D.N.Y. 2000) (holding that the plaintiff "does not, however, offer or supply *any* evidence to establish that the Defendants, or any of them, actually had (a reasonable possibility of) access").

Defendants go so far as to cite a court ruling following a bench trial as a basis for concluding that Johnston's claims should be dismissed with prejudice immediately. *See Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014 WL 6982331, at *2, 5-6 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031 (5th Cir. 2015). The *Guzman* opinion cited is the district court's findings following a bench trial. Notably, Judge Costa (who now sits on the Fifth Circuit Court of

Appeals) had previously *denied the defendants' Rule 12 motion to dismiss on the issue of access in the same case. See* Dkt. 30, Memorandum and Order filed May 20, 2013 in Cause No 12-cv-00042, *Guzman v. Hacienda Records & Rec. Studio, Inc.*, in the United States District Court for the Southern District of Texas (Victoria Division) (Costa, D.J.), attached hereto as Exhibit 4. If anything, *Guzman* supports the proposition that the Court should deny the motion to dismiss and allow Johnston to conduct discovery on issues associated with factual copying.

Recognizing that none of their primary cases occur in the Rule 12 context, Defendant moves on to cases at the extreme margins, such as *Feldman v. Twentieth Century Fox Film Corp.*, 723 F.Supp.2d 357 (D. Mass 2010). The *Feldman* opinion involved a *pro se* plaintiff whose allegations of access included wild accusations of computer hacking and telephone wiretapping as part of the defendants.

The cited summary judgment cases, to say nothing of *Guzman* or the fact pattern of *Feldman*, are simply not relevant to Johnston's allegations of factual copying. These cases are relied upon for the mere fact that they achieved an outcome that Defendants want to see in this case. By doing so, Defendants subtly, casually and inappropriately assert a pleading standard that far exceeds Rule 8 and Rule 12, namely that dismissal is warranted unless there is actual evidentiary proof of factual copying identified and marshalled in the Original Complaint. This argument is inconsistent not only with federal law, but also plain common sense regarding federal court pleadings.

The motion to dismiss on the basis of "failure to plead access" should be denied.

4.      **Dismissal with prejudice is not the appropriate remedy.**

Alternatively, Johnson respectfully requests an opportunity to file an amended complaint should the Court feel that the pleading is somehow deficient. An amendment is not futile because

the current allegations regarding access are not the entirety of the assertions that Johnston could have alleged, but in the interest of brevity did not. Dismissal is simply too drastic a remedy for this stage of the litigation, particularly in light of Rule 15(a)'s "bias in favor of granting leave to amend." *Thomas v. Chevron U.S.A., Inc.,* 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 566 (5th Cir. 2002)); *see also Matter of Life Partners Holdings, Inc.* 926 F.3d 103 (5th Cir. 2019) (quoting Rule 15(a)(2) and stating that "[e]ven if a plaintiff's pleadings are deficient under Rule 12(b)(6), a district court should freely give leave [to amend] when justice so requires").

**D.**     **Plaintiff Has Sufficiently Pled Substantial Similarity for Rule 12 purposes.**

Similar to its "access" analysis, Defendants again invite the Court to undertake a rigorous summary judgment-type analysis of Johnston's copyrighted work and Nickelback's infringing work. Defendants recognize that such an early substantive examination is discretionary, *see* Dkt 17, Motion to Dismiss at ¶27 (recognizing that the Court "*may* determine the lack of similarity," and "*may* take judicial notice of the works at issue"), and Johnston respectfully contends that such analysis is inappropriate for this case and at this time.

    **1.**     **Protected versus Unprotected Elements**

First of all, the two works include both protected and unprotected elements, and therefore an early analysis would not necessarily reflect a true "apples to apples" comparison simply by listening to the two songs. At the appropriate stage, the factfinder should consider stripped-down versions of the copyrighted music and edited "mash-up" tracks to help filter out unprotectable material when comparing songs and to focus on the specific allegations of copyright infringement in the case. *See, e.g., Williams v. Bridgeport Music, Inc.*, 2014 U.S. Dist. LEXIS

199374 at **9-12 (C.D. Cal., Jan. 28, 2015)(on motion in limine, allowing edited recordings "tailored to the allegedly protected content asserted").

Second, Defendants' analysis of "similarity" overemphasizes alleged differences in generic, non-protectable elements of the works, while asking the Court to make preliminary but case-dispositive findings and conclusions regarding protectable elements. Defendants incorrectly argue that lyrical themes, ideas, and "scenes a faire" should be excluded entirely from the analysis, and then purport to reduce both works to little more than their unprotectable elements.

In fact, the law is clear that a work may be copyrightable even if it is entirely comprised of unprotectable elements. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991). The combination and selection of unprotectable elements is protectable under the Copyright Act if "the overall impact and effect indicate substantial appropriation." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992) ("Although copyright protection is not afforded to certain elements of a work, such limitations must not obscure the general proposition that copyright may inhere, under appropriate circumstances, *in the selection and arrangement of unprotected components*."). What is protectable is "the author's original contributions," *Feist*, 499 U.S. at 350, and the original way in which the author has "selected, coordinated, and arranged" the elements of his or her work. *Id.* at 358.

Here, Defendants assert that Rule 12 *requires* a plaintiff to specifically identify each protectable element, and each combination or arrangement of unprotectable components constituting a protected element, of its copyright. This is not the law. A "complaint pleading a copyright infringement claim must satisfy only the minimal notice-pleading requirements of

Federal Rule of Civil Procedure 8." *Arista Records LLC v. Greubel,* 453 F. Supp. 2d 961, 965 (N.D. Tex. 2006).

Such an approach prior to discovery would be manifestly unfair to Johnston. Johnston has pled substantial similarity with references to specific, protectable elements of his copyrighted work. He should be permitted to at least conduct discovery of Nickelback's and/or the Warner Defendants concerning how the song was composed and derived. This is not an unreasonable request, particularly given the fact Defendants' entire argument implies that their work was copied from a myriad of other sources, all of which are part of the public domain.[2]

## 2. <u>Substantial Similarity</u>

To the extent that the Court believes that some showing of substantial similarity is necessary, a side by side comparison of the works reflects substantial similarity between Johnston's *Rock Star* and the Nickelback Defendants' *Rockstar* sufficient to survive Rule 12 analysis.

Defendants argue that large swaths of Johnston's *Rock star* are not copyrightable, but this argument misses the point. "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)(Hand. J.)("[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate.").

In the recent <u>Blurred Lines</u> case, the Ninth Circuit Court of Appeals noted that "[m]usical compositions are not confined to a narrow range of expression." *Williams v. Gaye*, 895 F.3d 1106, 1120 (9th Cir. 2018). "Rather, as we have observed previously, music . . . is not capable of

---

[2] Oddly enough, the phrase "independent creation" never appears in Defendants' motion to dismiss.

ready classification into only five or six constituent elements, but is instead comprised of a large array of elements, some combination of which is protectable by copyright." *Id.*

"When a work contains both protectable and unprotectable elements, the court must apply the "more discerning ordinary observer test" and filter out the unprotectable material[3] from its comparison." *R Ready Prods. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000); *Kepner-Tregoe v. Leadership Software, Inc.*, 12 F.3d 527, 534-35 (5th Cir. 1994). To help juries filter out unprotectable material in comparing songs, courts often allow juries to consider stripped-down versions of the copyrighted music and edited "mash-up" tracks in order to focus the jury to the specific allegations of copyright infringement in the case. *See, e.g., Williams v. Bridgeport Music, Inc.*, 2014 U.S. Dist. LEXIS 199374 at **9-12 (C.D. Cal., Jan. 28, 2015) (on motion in limine, allowing edited recordings "tailored to the allegedly protected content asserted").

In their motion, Defendants attached the copyright registration deposit for Johnston's *Rock Star* as Exhibit A, against the produced album version of Nickelback's *Rockstar* as Exhibit B. Although a jury could reach a conclusion on similarity just by listening to these versions, it is more appropriate under the governing law to filter out the unprotectable elements of the songs and compare them on an "apples-to-apples" basis.

To facilitate a proper comparison (and filtering out unprotectable elements), Defendants offer the following alterative for the Court's consideration:

---

[3] The basic harmonic and rhythmic building blocks of music "have long been treated by courts as well-worn, unoriginal elements that are not entitled to copyright protection." *Batiste v. Najm*, 28 F. Supp. 3d 595, 615 (E.D. La. 2014). For example, the key or scale in which a melody is composed is not protectable is properly filtered out of the substantial similarity analysis. See, e.g., *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548-49 (S.D.N.Y. 2000) (concluding that "the key of A major" is a "non-protectible musical element[]" that is "not copyrightable as a matter of law"). Similarly, tempo (i.e., how fast or slow), meter (e.g., 4/4 time), instrumentation (e.g., the use of guitars, drums, synthesizers, etc.), and style or genre (e.g., hip hop, country, ec.) are less significant insofar as they represent musical building blocks and/or commonplace practices used in countless musical compositions. Therefore, presenting versions of the two worksin a manner that neutralizes these differences better enables the listener to hear the protected elements of the respective works.

- Johnston's Exhibit 1 is a demonstrative version of *Rockstar*, removing all instrumentation other than acoustic guitar, and moving the key from the original A-major to G-major.[4] A version of this song can also be found at the following website address: *https://youtu.be/gLaR17SxUDM* .

- Johnston's Exhibit 2 is a stripped-down, acoustic, infringing[5] performance of *Rockstar* (in G-major) by Nickelback, posted to YouTube on December 6, 2014. This version can also be found at the following link: *https://www.youtube.com/watch?v=EibCi0jFvt4*

**3. <u>Comparison and evidence of Substantial Similarity</u>**

In Paragraph 22 of the Original Complaint, Johnston identifies numerous points of substantial similarity, providing Defendants with full notice of Plaintiff's copyright infringement contention. One egregious example of Nickelback's plagiarism is evident in the signature phrase of *Rockstar*. The signature phrase of a song, also called a song's "hook," is the primary, identifying feature of a song and one of its most memorable elements.[6] It is indisputable that the hook for Johnston's Rock Star song is the lyrical phrase "Gonna be a rockstar someday," whereas the hook for Nickelback's Rockstar is the lyrical phrase "Hey hey I wanna be a rockstar."

In addition to the obvious lyrical similarities, the (at least) seven musical similarities of the signature phrase between the two songs are substantial, if not strikingly substantial:[7]

A. Both are two-measure iterations of the signature phrase;

B. Both are positioned and function as the song's cadential (ending) phrase;

C. Both begin on the second half of the first beat of the first measure of the phrase (see element C in green below);

---

[4] This acoustic version of *Rock Star* in G-major was recorded by Johnston at Mark Younger-Smith's studio in Smithville Texas in December 2019. This version mimics the original artist pitch demo that was made by Johnston for his band Snowblind Revival in 2001. Declaration ___.

[5] Nickelback has performed and published its infringing *Rockstar* song many times since 2005. Each of these performances is accused of infringement in this lawsuit.

[6] See, e.g., https://pdfs.semanticscholar.org/3f49/f90b48612692a028bc179feb60637e1a5b7a.pdf.

[7] The musical transcriptions are derived from Exhibits 1 and 2 to Defendants' Motion to Dismiss, and are transposed in the key of C major to facilitate the comparison.

D. Both begin in the third scale degree of the harmony in the first measure of the phrase (see yellow box example below);

E. Both end on the first beat of the second measure of the phrase (see element E in green below);

F. Both use the same descending melodic motive on the last lyric, a descending third interval from b3 to 1 (see blue box example below);

G. Both have substantially similar rhythms associated with the lyrics "Gonna be a rock star" and "I wanna be a rock star"—sixteenth notes followed by an eight note (see red box example below).



Although the above is a technical explanation of the similarities, a lay fact finder can easily appreciate these similarities by simply listening to these signature phrases performed acoustically in the same key.  *See* Exhibit 3, side by side comparison of Exhibit 1 with Exhibit 2

("mash-up" of the hooks from the two songs derived from Exhibits 1 and 2, also available online at _https://youtu.be/IAXNsD_yUHg_.)

Respectfully, Johnston contends that such analysis is unnecessary at this stage of the litigation. Nevertheless and to the extent the Court exercises its discretion to examine the issue, the above is just one (albeit very important) example of substantial, if not striking, similarity that should be evaluated by the ultimate finder of fact in the case. At a minimum, Plaintiff has pled a case that should survive Defendants' motions to dismiss under Rule 12(b)(6) because a "reasonable lay person" could find this portion of the works to be a compelling example of substantial, if not striking, similarity.

## CONCLUSION

Johnston has filed a well-pleaded complaint, for which the only objections raised at this juncture are more appropriately addressed at summary judgment. Plaintiff respectfully requests that the court in its discretion decline to engage in rigorous substantial similarity" analysis until a reasonable time after discovery has proceeded in the case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Kirk Johnston requests that the Court deny all Defendants' Rule 12 motions to dismiss this case. Johnston also requests such other and further relief as to which he may be entitled.

December 3, 2020                    **Respectfully Submitted,**

                                   **LAW OFFICE OF SESHA KALAPATAPU**

                                   By: *s/ Sesha Kalapatapu*

                                        Sesha Kalapatapu
                                        Texas State Bar No. 24002387
                                        2929 Allen Parkway, Suite 200
                                        Houston, TX 77019
                                        Telephone:  832.398.1771
                                        Fax:  713.574.4719
                                        Email:  *sesha@sktexaslaw.com*
                                        **Counsel for Plaintiff Kirk Johnston**


## CERTIFICATE OF SERVICE

        I hereby certify that on December 3, 2020, the foregoing document was served via the Court's cm/ecf system and in accordance with the Federal Rules of Civil Procedure on the following counsel:

Ken McKay                          *kmckay@bakerdonelson.com*
1301 McKinney St.
Houston, Texas 77010

David Steinberg                    *das@msk.com*
Emily Evitt                        *efe@msk.com*
Mitchell, Silberberg & Knupp LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067

Geoffrey H. Bracken                *gbracken@foley.com*
Michaela G. Bissett                *mbissett@foley.com*
Foley & Lardner, LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099


                                        /s/ Sesha Kalapatapu
                                        Sesha Kalapatapu