# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| KIRK JOHNSTON, § | |
| § | |
| Plaintiff, § | |
| § | NO. 20-CV-00497-RP |
| v. § | |
| § | |
| CHAD KROEGER, MICHAEL KROEGER, § | |
| RYAN PEAKE, DANIEL ADAIR, WARNER § | |
| MUSIC GROUP, ATLANTIC RECORDING § | |
| CORP., ROADRUNNER RECORDS, INC., § | |
| WARNER/CHAPPELL MUSIC, INC., AND § | |
| LIVE NATION ENTERTAINMENT, INC., § | |
| § | |
| Defendants. § | |

## DEFENDANTS CHAD KROEGER, MICHAEL KROEGER, RYAN PEAKE, DANIEL ADAIR, ROADRUNNER RECORDS, INC., AND WARNER CHAPPELL MUSIC, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6)

**I.      INTRODUCTION**

1.      Defendants' Motion to Dismiss ("Motion" or "Mot.") is premised upon a simple and routine request that this Court listen to the two musical works at issue.  *See* (and hear) audio files attached as Exs. 1-2 to the Motion.  If the two recordings do not sound substantially similar to the Court, then Plaintiff cannot state a claim for copyright infringement, and his complaint must be dismissed with prejudice.

2.      In its analysis, the Court may properly assume the role of an ordinary observer on this Rule 12(b)(6) motion and determine substantial similarity as a matter of law.  Indeed, the ordinary observer test asks whether "a layman [would] detect piracy without any aid or suggestion or critical analysis by others."  *Peel & Co., Inc. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001).  No special expert analysis or dissection is necessary to decide substantial similarity.

3.      Far from being unusual or disfavored, as Plaintiff contends, in meritless copyright infringement lawsuits such as this one, Rule 12 motions serve a vital gatekeeping function.  Mot. 1-3, 9-10.  They protect creators from having to defend against baseless claims just because, *e.g.*, two songs both happen to be written about being a "rock star."  Case law (and common sense) dictate that any such trivial thematic similarity cannot give rise to a copyright claim.  Mot. 10-11 (collecting cases).  Likewise, Rule 12 motions guard against far-fetched claims that a defendant gained access to a work because he somehow must have heard a plaintiff's obscure song.

4.      Faced with the fatal reality that the operative sound recordings of Plaintiff's Work and Defendants' Work sound nothing alike (not to mention that Defendants had no reasonable opportunity to hear Plaintiff's Work), Plaintiff tries to avoid the straightforward analysis that compels dismissal of this case.  Indeed, Plaintiff's Response in Opposition ("Opposition" or "Opp.") is telling because it impermissibly relies upon "stripped-down" versions of the works and a manipulated "mash-up" in its attempt to avoid dismissal.  Plaintiff's obfuscation must fail, however, because what matters under the threshold ordinary observer test is whether the alleged

musical *works at issue* sound substantially similar. Because they do not, and because no reasonable juror could find otherwise, this case should be dismissed with prejudice.

**II.     ARGUMENT**

        **A.     The Works at Issue Are Not Substantially Similar to an Ordinary Observer.**

5.     This case can and should be dismissed now because the works at issue sound nothing alike. No amount of amendment nor discovery can cure this fundamental defect in Plaintiff's copyright infringement claim.

6.     Plaintiff's Work is a musical composition called *Rock Star*. In support of their Motion, Defendants submitted a sound recording of Plaintiff's Work (Mot. Ex. 1), which matches the deposit copy that Plaintiff submitted to the U.S. Copyright Office in order to register a copyright in his musical composition. Plaintiff does not dispute this. Opp. 14. Defendants' Work is the song *Rockstar*, written and performed by the band Nickelback. In support of their Motion, Defendants submitted the commercially available recording of *Rockstar* (Mot. Ex. 2), which is the work Plaintiff alleges is infringing. *See* Complaint ¶ 28.

7.     A copyright infringement claim requires both (a) factual copying (*i.e.*, access plus probative similarity), and (b) substantial similarity. *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Plaintiff's discussion of probative similarity is irrelevant to this Motion. Opp. 7. If there is no *substantial* similarity, Plaintiff cannot state a claim for copyright infringement, and the issue of probative similarity (and access) is moot. To decide substantial similarity, "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997). In music cases, courts applying this "ordinary observer" test consider whether "[Defendants] took from [Plaintiff's Work] so much of what is pleasing to the ears of lay listeners[.]" *Gottwald v. Jones*, 2011 WL 4344038, at *4 (S.D.N.Y. Sept. 12, 2011).

8.     Complex analytic dissection and expert analysis have no place under the ordinary observer analysis; the test is whether a ***layman*** will detect infringement immediately, and without aid. *Peel*, 238 F.3d at 398. This is particularly true in cases, like this one, involving popular music. *See Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946) ("the test is the response of the ordinary lay hearer … on that issue, 'dissection' and expert testimony are irrelevant.").

9.     Texas district courts have not hesitated to dismiss copyright cases on Rule 12(b)(6) motions where, after comparing the works at issue, the court concluded that, like here, they were not substantially similar to an ordinary observer. *See, e.g.*, *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787 (S.D. Tex. 2009) (copyright infringement claim properly dismissed, without leave to amend, where court compared plaintiff's book and defendants' movie and determined they were not substantially similar); *Rucker v. Harlequin Enterprises, Ltd.*, 2013 WL 707922, at *5-10, (S.D. Tex. Feb. 26, 2013) (granting motion to dismiss, without leave to amend, where court performed a side-by-side comparison of defendant's romance novel and plaintiff's romance novel treatment and concluded they were not substantially similar in protectable expression).

10.    And courts across the country have granted motions to dismiss in analogous music cases after performing the ordinary observer analysis and determining the songs at issue were not substantially similar. *See, e.g., Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989) (upholding dismissal with prejudice of claim alleging copyright infringement; where "[t]he District Court had before it ... complete copies of both [plaintiff's] song and Prince's and was therefore in proper position to apply the substantial similarity test" and "the trial court carefully studied the lyrics involved and determined that reasonable minds could not differ as to the absence of substantial similarity."); *Gottwald*, 2011 WL 4344038, at *4-5 (applying "ordinary lay hearer" analysis and finding no lyrical or musical similarity and dismissing counterclaim with prejudice); *Pyatt v. Raymond*, 2011 WL 2078531, at *8 (S.D.N.Y. May 19, 2011) (in granting motions to dismiss, holding "not only are the lyrics of both songs different, but the overall musical impression of each song is also different . . . . no average lay observer would recognize the alleged copy as

3

having been appropriated from the copyrighted work.") (internal citation and quotation marks omitted); *Staggs v. West*, 2009 WL 2579665, at *3 (D. Md. Aug. 17, 2009) (comparing music and lyrics of songs at issue and granting motion to dismiss).

*Plaintiff Concedes That the Lyrics of the Works are Not Substantially Similar.*

11. As set forth in the Motion, the lyrics of Plaintiff's Work and Defendants' Work are not substantially similar. Plaintiff's Work contains a hopeful wish list of what the singer would do if he were a rock star, whereas Defendants' Work cynically highlights the darker side of rock-n-roll stardom. Mot. 13. The only conceivable similarities are the short phrase "be a rock star" and vaguely alleged "lyrical themes," neither of which is protectable by copyright. *See* Mot. 10-12.

12. Plaintiff offers no meaningful response to these points (or the numerous examples of earlier works depicting the rock star fantasy, Mot. 11, n.5), instead arguing that the "selection and arrangement of unprotected components" can be protected by copyright under certain circumstances. Opp. 12, quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 n.4 (9th Cir. 1992).

13. But Plaintiff's Opposition still does not identify what he claims to be the lyrical similarities between the works at issue – regardless of whether his lyrics are protectable or whether they contain some supposed protectable combination of unprotected elements. This is because both songs' generic mention of a "tour bus," "jets," and celebrities cannot suffice to state a claim for copyright infringement by any metric. *See* Mot. 11-12.[1]

14. In failing to respond to – let alone refute – Defendants' arguments regarding the lyrics of the works at issue, Plaintiff has conceded that they are not substantially similar.

*Comparing the Works at Issue, the Music is Not Substantially Similar.*

---

[1] *Compare Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (substantial similarity possible based on selection and arrangement of unprotected elements where works shared a dozen specific similarities, including both works' protagonists being a "young, good-looking, muscular black surgeon" and both including plot points that "the hospital's bid for reaccreditation is vehemently opposed by a Hispanic politician.").

15.     Like the lyrics, the music of Plaintiff's Work and Defendants' Work is not substantially similar. An ordinary listener comparing the sound recording of Plaintiff's Work – which exactly reflects what he submitted to the Copyright Office as embodying his musical composition – with the commercial sound recording of Defendants' Work will find that they sound nothing alike. *See* Mot. 14, Exs. 1-2. Therefore, to decide Defendants' Motion to Dismiss, the Court need simply listen to Plaintiffs' Work (as contained in Exhibit 1 to Defendants' Motion) and Defendants' Work (as contained in Exhibit 2 to Defendants' Motion). The Court's analysis can and should end there.

### *It is Improper to Look Beyond the Works at Issue.*

16.     Recognizing that a simple side-by-side comparison of the sound recordings of Plaintiff's Work and Defendants' Work is damning to Plaintiff's argument, Plaintiff contends that special "stripped-down" versions, a "mash-up," and musicological analysis are required to ascertain the alleged infringement. Opp. 11, 14-16. Not only is Plaintiff wrong, but by insisting that complex dissection and musical gymnastics are necessary to sustain his claim, he effectively concedes the works at issue do ***not*** sound substantially similar to an ordinary listener. As the materials that Plaintiff submitted as Exhibits 1-3 to his Opposition do not reflect the actual works at issue, they have no place in the Court's consideration of this Motion.

17.     As a threshold matter, Plaintiff's submission of such materials is inconsistent with core aforementioned Fifth Circuit precedent holding that in order to determine substantial similarity, "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar,'" "without any aid or suggestion or critical analysis by others," resulting in a reaction that "should be spontaneous and immediate." *Creations Unlimited*, 112 F.3d at 816; *Peel*, 238 F.3d at 398. In other words, expert testimony, demonstratives, and complex analytical dissection going beyond what a layman would perceive from the works themselves have no place in the substantial similarity analysis. As a result, Plaintiff's purported exhibits (Opp. Exs. 1-3) – entailing an

5

alleged 2019 acoustic guitar performance of Plaintiff's song, recorded only after his awareness of Defendants' Work (Johnston Decl. (Dkt. 21-1) ¶ 1 & Ex. 1, Complaint ¶ 29) – as well as Plaintiff's purported "technical explanation" of the supposed musicological similarities between the works (Opp. 15-16) are simply not relevant to the central task before the Court and cannot be considered on this Motion. *Randolph*, 634 F. Supp. 2d at 788; *see also Arnstein*, 154 F.2d at 472-73 ("The proper criterion … is not an analytic or other comparison of the respective musical compositions as they appear on paper or in the judgment of trained musicians."). Regardless, Plaintiff's Exhibits are otherwise unpersuasive.[2]

18.     Additionally, while the Court may compare the ***works at issue*** on a motion to dismiss (*see* Mot. 3), generally the Court may not consider extrinsic evidence. *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) ("Although the district court may not go outside the complaint, this Court has recognized one limited exception [for] … documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."). Here, the purported "stripped-down versions" and "mash-up" are ***not*** the works at issue, and are not otherwise properly before the Court on this Rule 12(b)(6) Motion. *See Pyatt*, 2011 WL 2078531, at *9-10 (on motions to dismiss, rejecting plaintiff's attempt to introduce other sound recordings of plaintiff's song that had not been registered with the Copyright Office because "those works are not the subject of the Plaintiffs' complaint.").

19.     Moreover, materials specially created to compare the works at issue have no place in the ordinary observer analysis. In *Randolph*, for example, where the plaintiff "submitted a PowerPoint presentation that perform[ed] a side-by-side comparison of the two works[,]" the court emphasized that "demonstrative aids of the type that [plaintiff] has submitted are not useful in

---

[2] Plaintiff's illogical claim that his added Exhibits and analysis merely "filter out the non-protectable elements of the songs" (Opp. 14) misapprehends the purpose of filtration in the Fifth Circuit, which is to ***limit*** the scope of a plaintiff's asserted copyright protection when determining substantial similarity, not to ***expand*** it beyond what a layperson would ordinarily perceive when comparing the actual works at issue. *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533-34 (5th Cir. 1994).

determining substantial similarity." 634 F. Supp. 2d at 791-92.  Citing *Peel's* dictate against "aid or suggestion or critical analysis by others" (238 F.3d at 398), the court concluded that because "[o]nly the works themselves are probative in a substantial similarity analysis[,]" the proper comparison in *Randolph* was between "complete copies of the works[,]" *i.e.*, plaintiff's book and defendants' movie. *Id.* at 788, 792. Likewise, here, the proper comparison is between Plaintiff's Work and Defendants' Work.

20. The case that Plaintiff cites for the proposition that courts consider "stripped-down versions" and "mash-ups," *Williams v. Bridgeport Music, Inc.*, 2015 WL 13648068 (2014 U.S. Dist. LEXIS 199374) (C.D. Cal. Jan. 28, 2015), is inapposite. *Williams* involved musical works (most notably Marvin Gaye's *Got To Give It Up*) whose copyright was limited to the sheet music, or "deposit copy," that was submitted to the Copyright Office since the works were created under the 1909 Copyright Act. *Id.* at *2-3. This case, however, and the scope of copyright protection in Plaintiff's Work, is governed by the current 1976 Copyright Act, which permits the author of a musical composition to register the sound recording embodying that musical composition as the "deposit copy" for the composition. 17 U.S.C. § 408(b). Thus, if anything, *Williams* supports this Court comparing the sound recording of Plaintiff's Work (*i.e.*, what he deposited with the Copyright Office) – not a "stripped-down" or "edited" version, and certainly not a modified version allegedly made in 2019 on the eve of litigation – with Defendants' Work.

21. This approach to the analysis is consistent with the fundamental role that deposit copies play in the U.S. copyright registration process. "As a general rule, a registration for a work of authorship covers the entire copyrightable content of the authorship that (i) is claimed in the application, (ii) is owned by the claimant, and (iii) ***is contained in the deposit copy(ies).***" U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 504 (3d ed. 2017) (emphasis added). Having submitted the sound recording embodying Plaintiff's Work to the Copyright Office as the deposit copy, Plaintiff cannot now try to redefine the parameters of his copyright after the fact, by, *inter alia*, adding performance elements such as an acoustic guitar, or changing

the key, tempo, and rhythmic and melodic elements, in the hope of making Plaintiff's Work seem more similar to Defendants' Work. *See Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) ("a copyright does not encompass designs that vary in essential respects from what was presented to the Copyright Office. Otherwise, the purposes of the deposit requirement would be nullified."); *see also Creations Unlimited*, 112 F.3d at 816 (where plaintiff had registered black-and-white line drawings of its T-shirts with the Copyright Office, the district court properly compared the deposited line drawings – rather than plaintiff's T-shirts – with defendant's T-shirts). Any analysis of Plaintiff's claim in connection with this Motion must begin and end with the Plaintiff's Work as defined in the deposit copy.

### B. Plaintiff has Failed to Sufficiently Plead Access.

22. As a threshold matter, because a claim for copyright infringement requires **both** (a) factual copying (*i.e.*, access plus probative similarity), and (b) substantial similarity, the Court need not reach the issue of access if it finds that the works at issue are not substantially similar. *See Positive Black Talk Inc.*, 394 F.3d at 367; *Rucker*, 2013 WL 707922, at *2, n.2 (granting motion to dismiss and declining to consider access because "there is no actionable similarity between the works and therefore no infringement."); Mot. 3-4. Nonetheless, Plaintiff has also failed to sufficiently plead access, which is an independent ground for granting the Motion.

23. Contrary to Plaintiff's arguments in his Opposition, lack of access can be grounds for granting a motion to dismiss where, as here, a plaintiff's allegations amount to bald speculation. Such decisions are not limited to summary judgment motions nor 12(b)(6) motions in *pro se* cases, as Plaintiff suggests. For example, in *Martinez v. McGraw*, a case similarly involving two songs, the court granted defendants' motion to dismiss, without leave to amend, finding that plaintiff's allegations of access were based on the "tenuous string of facts" that defendant country star Tim McGraw purportedly had access to plaintiff's song at issue because McGraw recorded music in the same recording studio, using some of the same songwriters, as another singer, Terri Clark, who

released a song with a title similar to another song of plaintiff's. 2009 WL 2447611, at *5 (M.D. Tenn. Aug. 10, 2009).[3]

24.     Similarly, in *Arnett v. Jackson* (which involved two songs titled *Remember Me*), the court granted defendants' motion to dismiss on access, without leave to amend, where plaintiff allegedly made his song available on the Internet, sold copies, and provided it to four intermediaries who purportedly had a connection with defendant. 2017 WL 3493606, at *3-4 (E.D.N.C. Aug. 14, 2017). The court held, "[a]t most, [plaintiff] plausibly alleges the mere possibility that [defendant] had the opportunity to listen to or copy *Remember Me* via [plaintiff's] distributed recordings. That mere possibility does not suffice." *Id*. at *2. And as to the purported access via intermediaries, the court found that plaintiff impermissibly relied on a "tortuous chain of hypothetical transmittals." *Id.* at *4 (internal citation omitted). *See* Mot. 4, 6 (citing *Martinez* and *Arnett*). Plaintiff's allegations of access here are equally tortuous.

25.     Plaintiff goes to great lengths to try and distinguish Defendants' other authorities on their **procedural posture** (*see* Opp. 8-9),[4] but he has done nothing to substantively distinguish his untenable allegations of access from the other failed chain-of-events and widespread dissemination theories rejected in those cases. At best, Plaintiff's access theory amounts to a vague claim that because he met with some (as-of-yet-still-unidentified) A&R representatives, purportedly sent out **15 demo CDs** to major record labels, and played concerts in **five cities** someone from Nickelback or its record label, Roadrunner Records, must have somehow heard Plaintiff's Work. *See* Mot. 6-8. This bald speculation about "hypothetical transmittals" cannot save a claim of access. As in *Martinez* and *Arnett*, Plaintiff's claim should be dismissed at the pleading stage.

---

[3] Like Plaintiff here, the plaintiff in *Martinez* argued (unsuccessfully) that "Defendants' Motion relies primarily on case law involving motions for summary judgment in an attempt to prematurely litigate this case on the merits." 2009 WL 2447611, at *6.

[4] Plaintiff's attempt to distinguish *Guzman* is particularly curious. He claims that the judge in that case denied an earlier 12(b)(6) motion on access, but then attaches the 12(b)(6) ruling, which addressed the sufficiency of plaintiff's allegations of copying. *See* Opp. 9, Ex. 4.

9

26.     Plaintiff urges the Court not to dismiss his complaint with prejudice because apparently "the current allegations regarding access are not the entirety of the assertions that Johnston could have alleged, but in the interest of brevity did not." Opp. 11.  Tellingly, however, although Plaintiff could have responded to Defendants' Motion by filing an amended complaint and pleading additional facts regarding access, he did not.  *See* FRCP 15(a)(1)(B).  And the Opposition does not elaborate or provide any details about what allegations of access Plaintiff could purportedly add should he be given leave to amend (which he should not).  *See id.*

27.     Nor can Plaintiff credibly argue that he needs discovery in order to plead access. Opp. 7.  As Plaintiff acknowledges in his Opposition, he should know to which individuals and companies he supposedly sent copies of Plaintiff's Work, as well as where and when Snowblind Revival performed Plaintiff's Work.  *See* Opp. 6-7.

28.     Because Plaintiff did not plead these additional facts allegedly supporting access in his complaint, nor amend to allege them in response to the Motion, the most logical conclusion is that he cannot plead access.  Far from justifying discovery that will amount to a fishing expedition, Plaintiff's pleading deficiencies demonstrate that this meritless case should be dismissed now.

## III.   CONCLUSION

29.     For the foregoing reasons, and those set forth in the Motion, Plaintiff's complaint should be dismissed without leave to amend.  Because substantial similarity is based on a comparison of the works at issue by an ordinary observer, and the works at issue sound nothing alike, amendment would be futile.  *See Randolph*, 634 F. Supp. 2d at 788 ("The works themselves, which this court fully considered, were not substantially similar.  No pleading amendment by Randolph could change the works. When a claim of substantial similarity is dismissed [as] a matter of law, dismissal with prejudice is the logical result.").  Likewise, because Plaintiff has failed to plead access, despite two opportunities to do so, amendment would be futile on that ground, too.

| | |
|---|---|
| **Dated: December 17, 2020** | **Respectfully Submitted,** |

**MITCHELL SILBERBERG & KNUPP LLP**

By: /s/David A. Steinberg_____
    David A. Steinberg
    Emily F. Evitt
    2049 Century Park East, 18th Floor
    Los Angeles, CA 90067
    Telephone: 310.312.2000
    Email:  *das@msk.com; efe@msk.com*
    **Counsel for Defendants**

**BAKER DONELSON BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

By: /s/ Kenneth E. McKay_____
    Kenneth E. McKay
    Texas State Bar No. 13690835
    1301 McKinney St.
    Houston, Texas 77010
    Telephone: 713.286.7179
    Fax: 713.583.4603
    Email: *kmckay@bakerdonelson.com*
    **Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2020, the foregoing document was served via the Court's CM/ECF system and in accordance with the Federal Rules of Civil Procedure on the following counsel:

***COUNSEL FOR PLAINTIFF KIRK JOHNSTON***

LAW OFFICE OF SESHA KALAPATAPU
Sesha Kalapatapu
2929 Allen Parkway, Suite 200
Houston, TX 77019
Telephone: 832.398.1771
Fax: 713.574.4719
Email: sesha@sktexaslaw.com

JONES WALKER LLP
Jeffrey J. Phillips
811 Main Street, Suite 2900
Houston, TX 77002
Telephone: 713.437.1864
Fax: 713.437.1810
Email: jphillips@joneswalker.com

***COUNSEL FOR LIVE NATION ENTERTAINMENT, INC***.

FOLEY & LARDNER LLP
Geoffrey H. Bracken
Michaela G. Bissett
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Fax: (713) 276-5555
E-mails: gbracken@foley.com;
mbissett@foley.com

                                                      /s/David A. Steinberg
                                                        David A. Steinberg