UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KIRK JOHNSTON, | § |
| | § |
| Plaintiff, | § |
| | § NO. 20-CV-00497-RP |
| v. | § |
| | § |
| CHAD KROEGER, MICHAEL KROEGER, | § |
| RYAN PEAKE, DANIEL ADAIR, WARNER | § |
| MUSIC GROUP, ATLANTIC RECORDING | § |
| CORP., ROADRUNNER RECORDS, INC., | § |
| WARNER/CHAPPELL MUSIC, INC., AND | § |
| LIVE NATION ENTERTAINMENT, INC., | § |
| | § |
| Defendants. | § |

**OBJECTIONS TO THE AUGUST 11, 2021 REPORT & RECOMMENDATION DENYING DEFENDANTS' MOTION TO DISMISS**

Defendants Chad Kroeger, Michael Kroeger, Ryan Peake, Daniel Adair (who collectively perform as the musical group p/k/a "Nickelback"), Roadrunner Records, Inc. ("Roadrunner"), and Warner Chappell Music, Inc. (erroneously sued as Warner/Chappell Music, Inc.) ("Warner Chappell," and, collectively with Nickelback and Roadrunner, the "Nickelback Defendants") hereby respectfully object to the Report and Recommendation of United States Magistrate Judge Susan Hightower (Dkt. 27, the "Recommendation" or "Rec.") as follows:

**I.    INTRODUCTION AND BACKGROUND**

Plaintiff Kirk Johnston ("Plaintiff or "Johnston"), a member of an obscure "alternative rock band" called Snowblind Revival, alleges that he wrote a musical composition titled *Rock Star* ("Plaintiff's Work") in 2001. Complaint (Dkt. 1) ¶¶ 14-15. In 2005, the Canadian rock band Nickelback released a song that was coincidentally titled *Rockstar* ("Defendants' Work"). *Id.* ¶ 20. Not surprisingly, both works touch upon the commonplace theme of imagining being a rock star. However, the two songs sound nothing alike. Nonetheless, 15 years after the release

of Defendants' Work, Johnston sued the Nickelback Defendants and three other defendants for copyright infringement.[1]

On October 22, 2020, the Nickelback Defendants filed a Motion to Dismiss, which was ultimately referred to Magistrate Judge Hightower.  Dkt. 17.  In support of their Motion, the Nickelback Defendants submitted sound recordings of Plaintiff's Work and Defendants' Work (Dkt. 17-1, 17-2), and asked the Court to assume the role of an ordinary listener and compare them.  (The Nickelback Defendants will be providing additional courtesy copies of these sound recordings in support of the Objections.)  On August 11, 2021, the Magistrate issued her decision, which recommended that the Nickelback Defendants' Motion to Dismiss be denied. Dkt. 27 (Rec.).

"To establish a claim for copyright infringement, a plaintiff must prove that:  (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original."  *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Actionable copying, in turn, requires (a) factual copying, which may be inferred from "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity"; and (b) substantial similarity.  *Id.* at 368.

In recommending that the Nickelback Defendants' Motion to Dismiss be denied, the Magistrate concluded that Johnston sufficiently (1) alleged access and (2) pled substantial similarity.  Rec. at 5-7.  The Nickelback Defendants object to both of these findings.  As to access, the Recommendation failed to sufficiently scrutinize Johnston's actual allegations, which amount to nothing more than bare corporate receipt.  With regard to substantial similarity, the Nickelback Defendants object that the Magistrate did not properly apply the "ordinary observer" test.  For these reasons, and because Johnston's Complaint is fatally deficient, the Objections should be sustained and the Motion to Dismiss should be granted.

---

[1] Johnston thereafter voluntarily dismissed Warner Music Group and Atlantic Recording Corporation, which did not distribute Defendants' Work.  *See* Dkt. 9.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may serve and file objections to a magistrate judge's proposed findings and recommendations within 14 days, and thereby secure a *de novo* review by the district court.  A district court has "wide discretion to consider and reconsider the magistrate judge's recommendation," *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010), and the court may accept, reject or modify the report, in whole or in part.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   OBJECTIONS

### A.   **Objection 1: The Recommendation failed to adequately scrutinize Johnston's speculative access allegations, which are based on bare corporate receipt.**

In concluding that Johnston had adequately alleged access, the Magistrate reasoned:

> Johnston alleges that Snowblind Revival presented the Copyrighted Work to executives from Universal Music Group at in-person meetings and provided them discs containing the song as part of a press kit. Dkt. 1 ¶¶ 16-17.  At the time, Nickelback's label, Roadrunner Records, was a wholly owned subsidiary of Universal Music Group. Dkt. 21 at 10 n.1.  These facts, taken as true, could have given the Nickelback Defendants a reasonable opportunity to hear Johnston's Copyrighted Work.

Rec. at 5 (first citing Dkt. 1 ¶¶ 16-17 and then citing Dkt. 21 at 10 n.1).  Presented in this summary fashion, the Recommendation obscures the fact that Johnston's allegations contain none of the detail necessary to make his access theory viable.  "[A] bare possibility [of access] will not suffice; neither will a finding of access based on speculation or conjecture." *Armour v. Knowles*, 512 F.3d 147, 153 (5th Cir. 2007) (quotations omitted).  Looking at the actual

3

paragraphs of the Complaint cited in the Recommendation, it is clear that Johnston alleges nothing more than a speculative chain of events or "bare corporate receipt," which has consistently been rejected as insufficient for access.[2] *See, e.g.*, *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 112-13 (5th Cir. 1978) (finding no access where plaintiff merely sent her composition to four individuals (Guy Lombardo, Dinah Shore, Jerri Green, and Don Cherry) and two companies (Broadcast Music Incorporated and Mills Publishing Company)); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 52 (2d Cir. 2003) (where plaintiff sent out a multitude of unsolicited tapes of his song, the Second Circuit held plaintiff's "mass-mailing allegation was [] properly rejected by the District Court as legally insufficient proof of access"); *Loomis v. Cornish*, 836 F.3d at 995-96 (collecting bare corporate receipt cases and finding no access).

The Recommendation cites to paragraph 16 of the Complaint, where Johnston alleges that "Snowblind Revival presented their music to a broad variety of labels, including Universal Music Group, Columbia Records, Maverick Records, Atlantic Records, Arista Records, Sony Music Group and Warner Music Group." Dkt. 1 ¶ 16. However, he provides no details of those meetings, such as the names of the record label representatives with whom he allegedly met, where the meetings took place, or even when the meetings took place. *Id.* The allegations in paragraph 17 of the Complaint, on which the Recommendation is also based, fare no better: Johnston claims that he sent out 15 demo CDs to "the various record labels" including "WMG … Atlantic Records, Sony, Universal and Columbia" – again, without identifying any specific individuals at any of these record labels. *Id.* ¶ 17. Further, Johnston has failed to allege any means by which Plaintiff's Work could have ended up in the hands of the individual members of

---

[2] Two common theories of access are a "chain of events" linking a plaintiff's music to the defendants or the "widespread dissemination" of a plaintiff's music. *Batiste v. Lewis*, 976 F.3d 493, 503-04 (5th Cir., 2020). "Bare corporate receipt" is a specific type of chain of events theory that does not satisfy a plaintiff's burden to allege access. *See, e.g.*, *Loomis v. Cornish*, 836 F.3d 991, 995-96 (9th Cir. 2016). The Recommendation made no mention of any purported "widespread dissemination"– *i.e.*, that Johnston's band performed live shows in five U.S. cities (Dkt. 1 ¶ 17) – presumably because those allegations are wholly inadequate to sufficiently establish access.

Nickelback who composed Defendants' Work.³ None of these allegations describe a chain of events that links Plaintiff's Work to the creation of Defendants' Work.

Moreover, the lynchpin of the Recommendation's finding on access – that "[a]t the time, Nickelback's label, Roadrunner Records, was a wholly owned subsidiary of Universal Music Group" – is based on a footnote in Johnston's Opposition to the Motion to Dismiss, which in turn cites to an online news article from 2006. Rec. at 5, citing Dkt. 21 at 10, n.1. Relying on purported evidence outside of the pleadings in this manner is impermissible on a motion to dismiss. *See, e.g.*, *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").⁴

Johnston's allegations of access thus fail as a matter of law, and his failure to plead access is grounds for granting the Nickelback Defendants' Motion to Dismiss. *See, e.g.*, *Martinez v. McGraw*, 2009 WL 2447611, at *5 (M.D. Tenn. Aug. 10, 2009) (granting defendants' motion to dismiss, without leave to amend, where plaintiff's allegations of access were based on the "tenuous string of facts" that defendant country star Tim McGraw purportedly had access to plaintiff's song because McGraw recorded music in the same recording studio and used some of the same songwriters as another singer, Terri Clark, who released a song with a title similar to another one of plaintiff's songs); *Arnett v. Jackson*, 2017 WL 3493606, at *4 (E.D.N.C. Aug. 14, 2017) (granting defendants' motion to dismiss on access, without leave to amend, in case

---

³ In response to the Motion to Dismiss, Johnston could have amended his Complaint to add additional, more detailed access allegations. The fact that he chose not to is telling.

⁴ Even if the claim in the footnote and article were considered, it would not establish access – it would not even establish bare corporate receipt by Defendants Roadrunner or Warner Chappell. The article simply mentions Roadrunner having an unidentified "partnership deal with Universal Music" – which is different from being a "wholly owned subsidiary." Nor does the article contain any details of such a "partnership," nor any other basis to conclude that it would have provided an opportunity for anyone affiliated with Roadrunner, or any of the other Nickelback Defendants, to hear Johnston's song.

5

involving two songs titled *Remember Me*; finding that plaintiff's access theory impermissibly relied on a "tortuous chain of hypothetical transmittals.").

### B. Objection 2: The Recommendation erred by not properly applying the "ordinary observer" test.

In concluding that Johnston had sufficiently alleged substantial similarity between Plaintiff's Work and Defendants' Work, the Recommendation states: "Having listened to the works at issue, Dkts. 17-1 and 17-2, the Court finds that it is possible for a reasonable juror to determine that the works share protectable elements." Rec. at 7. The Recommendation, however, does not specify any elements that a jury could find to be protectable similarities between the works at issue.

In determining whether two works are substantially similar, courts in the Fifth Circuit apply an "ordinary observer test" whereby "[t]wo works are substantially similar where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same.'" *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000) (quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)). "Under the ordinary observer or audience test used in making this factual determination, a layman must detect piracy without any aid or suggestion or critical analysis by others. The reaction of the public to the matter should be spontaneous and immediate." *Peel & Co., Inc. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001) (citation and internal quotations omitted). In music cases, the Judge assumes the role of an ordinary listener, and determines whether the songs sound substantially similar to the lay listener – in other words, whether "[Defendants] took from [Plaintiff's Work] so much of what is pleasing to the ears of lay listeners[.]" *Gottwald v. Jones*, 2011 WL 4344038 at *4 (S.D.N.Y. Sept. 12, 2011).[5]

---

[5] "When a work contains both protectable and unprotectable elements, however, the court must apply the 'more discerning' ordinary observer test" and filter out the unprotectable material from its comparison. *R. Ready Prods.*, 85 F. Supp. 2d at 683; *see Kepner-Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 534-35 (5th Cir. 1994).

6

After concluding "it is possible for a reasonable juror to determine that the works share protectable elements[,]" the Recommendation goes on to state, "[w]hether Johnston will be able to ***produce evidence*** that these similarities rise to the level of 'substantial' or 'striking' in view of the Nickelback Defendants' level of access is yet to be determined." Rec. at 7 (emphasis added). But considering *evidence* is not part of applying the ordinary observer test; the Court need only listen to and compare the two works at issue from a layman's perspective. That is precisely why "[w]hen the original work and the allegedly infringing copy are … available to the court for side-by-side comparison, substantial similarity can be decided on a Rule 12(b)(6) motion to dismiss." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787 (S.D. Tex. 2009); *see also*, *Rucker v. Harlequin Enters., Ltd.*, 2013 WL 707922, at *4-10 (S.D. Tex. Feb. 26, 2013) (comparing works at issue and granting motion to dismiss, with prejudice); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989) (upholding dismissal with prejudice of claim alleging copyright infringement of plaintiff's song lyrics by the artist Prince; noting that "[t]he District Court had before it ... complete copies of both [plaintiff's] song and Prince's and was therefore in proper position to apply the substantial similarity test").

Respectfully, the Nickelback Defendants disagree with the Recommendation's finding on substantial similarity. When this Court conducts its *de novo* review of the works at issue by listening to Plaintiff's Work and Defendants' Work,[6] the Nickelback Defendants submit that the Court will find that the two works are not substantially similar – either lyrically or musically.

Neither the Complaint, nor Johnston's Opposition to the Motion to Dismiss, nor the Recommendation has identified any alleged protectable lyrical similarities. Johnston failed to

---

[6] Any given song usually consists of both (1) a musical composition – *i.e.*, the notes and lyrics (commonly documented on sheet music), and (2) a sound recording – *i.e.*, the recorded performance of a musical composition. Each is separately copyrightable. *See* 17 U.S.C. § 102. Here, Plaintiff alleges that Defendants' exploitation of the musical composition, sound recording, and audio-visual recording of Nickelback's *Rockstar* infringes Plaintiff's copyright in his musical composition *Rock Star*. *See* Dkt. 1 ¶¶ 15, 28. On a motion to dismiss, where Plaintiff has alleged infringement of a musical composition, the Court may compare a *sound recording* embodying Plaintiff's Work with a sound recording of Defendants' Work. *See Gottwald*, 2011 WL 4344038 at *1-2, *6.

7

identify any specific lyrical similarities between the works at issue; he could only conceivably point to the titles of the two works and "lyrical themes[.]"  Dkt. 1 ¶ 23.  Titles are not protectable by copyright, and their similarity cannot give rise to an infringement claim.  *See Positive Black Talk*, 394 F.3d at 374, n.14 ("[Plaintiff] also concedes that song titles are not copyrightable and therefore could not be considered by the jury in the substantial similarity determination."); *Huffman v. Burnt Puppy Music*, 2017 WL 11046666, at *4 (W.D. Tex. Feb. 1, 2017) (Pitman, J.) ("the alleged fact that both Plaintiff and some defendants used the same common words in the titles of their works does not allow the plausible inference that independent creation was unlikely.").  Nor does copyright protect the commonplace lyrical theme of imagining being a rock star.  *See Pyatt v. Raymond*, 2011 WL 2078531, at *7 (S.D.N.Y. May 19, 2011) (granting motion to dismiss:  "While both songs (like millions of others) share the theme of relationships between men and women, this theme is an idea that is not copyrightable.").

As for the music, it is evident to an ordinary observer that the sound recording of Plaintiff's Work has a steady, driving guitar beat, whereas Defendants' Work does not and is obviously slower.  The two songs are not in the same key; Plaintiff's Work is in a major key, whereas Defendants' Work is in both major and minor keys.  Further, the styles of the two works are different.  Even Plaintiff acknowledges that his band Snowblind Revival and Nickelback play different genres of music: "Unlike Nickelback's hard rock sound, Snowblind Revival would be considered an alternative rock band with more indie/eclectic roots."  Dkt. 1 ¶ 14.  And most importantly, the melodies of Plaintiff's Work and Defendants' Work sound nothing alike.

## IV.   CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion to Dismiss, the Nickelback Defendants respectfully request that the Court reject the Report and Recommendation's findings on access and substantial similarity and dismiss Johnston's claims against the Nickelback Defendants under Rule 12(b)(6), without leave to amend.

**Dated: August 25, 2021**                    **Respectfully Submitted,**

**MITCHELL SILBERBERG & KNUPP LLP**

By: _____
      David A. Steinberg (*pro hac vice*)
      Emily F. Evitt (*pro hac vice*)
      2049 Century Park East, 18th Floor
      Los Angeles, CA 90067
      Telephone: 310.312.2000
      Email:  *das@msk.com; efe@msk.com*
      Counsel for the Nickelback Defendants

**BAKER DONELSON BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

By: __/s/Kenneth E. McKay_____
      Kenneth E. McKay
      Texas State Bar No. 13690835
      1301 McKinney St.
      Houston, Texas 77010
      Telephone: 713.286.7179
      Fax: 713.583.4603
      Email: *kmckay@bakerdonelson.com*
      Counsel for the Nickelback Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2021, the foregoing document was served via the Court's CM/ECF system and in accordance with the Federal Rules of Civil Procedure on the following:

**MAGISTRATE JUDGE SUSAN HIGHTOWER**

U.S. Magistrate Judge Susan Hightower
USDC – Western Texas
501 West 5th Street, Suite 6100
Austin, TX 78701

**COUNSEL FOR PLAINTIFF KIRK JOHNSTON**

Sesha Kalapatapu
2929 Allen Parkway, Suite 200
Houston, TX 77019
Telephone: 832.398.1771
Fax: 713.574.4719
Email: sesha@sktexaslaw.com

Jeffrey J. Phillips
811 Main Street, Suite 2900
Houston, TX 77002
Telephone: 713.437.1864
Fax: 713.437.1810
Email: jphillips@joneswalker.com

**COUNSEL FOR**
**LIVE NATION ENTERTAINMENT, INC.**

FOLEY & LARDNER LLP
Geoffrey H. Bracken
Michaela G. Bissett
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Fax: (713) 276-5555
E-mails: gbracken@foley.com;
mbissett@foley.com

_____
David A. Steinberg