**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KIRK JOHNSTON,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CHAD KROEGER, MICHAEL** | § | |
| **KROEGER, RYAN PEAKE,** | § | **Case No. 1:20-cv-00497-RP** |
| **DANIEL ADAIR, ROADRUNNER** | § | |
| **RECORDS, INC., and WARNER/** | § | |
| **CHAPPELL MUSIC, INC.,** | § | |
| *Defendants* | § | |

**ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Now before the Court are (1) Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Statute of Limitations and Application of the Discovery Rule to Plaintiff's Damages (Dkt. 58) and (2) Defendants Chad Kroeger, Michael Kroger, Ryan Peake, Daniel Adair, Roadrunner Records, Inc., and Warner Chappell Music, Inc.'s Motion for Summary Judgment (Dkt. 59), both filed December 16, 2022, and the associated response and reply briefs. By Text Orders entered January 3, 2023, the District Court referred the motions to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

Plaintiff Kirk Johnston brings this copyright infringement suit against Chad Kroeger, Michael Kroeger, Ryan Peake, Daniel Adair, Roadrunner Records, Inc., and Warner Chappell Music, Inc. Defendants are the individual members of the group Nickelback and the record label and musical

publishing company that distribute Nickelback's work. Johnston alleges that Nickelback's song *Rockstar* ("Nickelback's Work"), released in 2005, copied his original musical composition *Rock Star* ("Plaintiff's Work"), which he wrote in 2001 while a member of the band Snowblind. Johnston holds a federal copyright registration for Plaintiff's Work, U.S. Copyright No. PA 2-216-632. Dkt. 59-1 at 304. The parties now bring cross-motions for summary judgment.

## II.    Summary Judgment Standard

Summary judgment will be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*,

476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

### III.    Defendants' Motion for Summary Judgment

The Court first takes up Defendants' motion for summary judgment on Johnston's sole claim of copyright infringement. If Defendants prevail on their motion, Johnston's motion for partial summary judgment will be rendered moot.

A claim for copyright infringement has three elements: (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam). Defendants do not challenge Johnston's copyright ownership, satisfying the first element of infringement. The Court turns to the second element, copying, which is dispositive.

### A.  Factual Copying

To establish factual copying, a plaintiff must show that the defendant actually used the copyrighted material to create his own work. *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020). Absent direct evidence of copying, a plaintiff can raise an inference of factual copying from "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing

work and (2) probative similarity." *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d

357, 368 (5th Cir. 2004) (quoting *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001)),

*abrogated on other grounds by Reed Elsevier, Inc. v. Muchnik*, 559 U.S. 154 (2010). A plaintiff

can show probative similarity by pointing to "any similarities between the two works," even as to

unprotectable elements, "that, in the normal course of events, would not be expected to arise

independently." *Id.* at 370 & n.9.

> A strong showing of probative similarity can make up for a lesser
> showing of access. *Id.* at 371. In fact, a plaintiff may raise an inference
> of factual copying without any proof of access if the works are
> "strikingly similar." *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113
> (5th Cir. 1978); *see also* 4 MELVILLE B. NIMMER & DAVID NIMMER,
> NIMMER ON COPYRIGHT § 13.02[B] (rev. ed. 2020). But the reverse is
> not true. Even with "overwhelming proof of access," a plaintiff can't
> establish factual copying "without some showing of probative
> similarity." *Positive Black Talk*, 394 F.3d at 371 n.10.

*Batiste*, 976 F.3d at 502. Thus, to survive summary judgment on the second element of copyright

infringement, Johnston must raise a genuine dispute as to either a combination of access and

probative similarity or, absent proof of access, striking similarity. *Id.*

## B. Access

To establish access,

> a plaintiff must show that the person who created the allegedly
> infringing work had a reasonable opportunity to view or hear the
> copyrighted work. A bare possibility of access isn't enough, nor is a
> theory of access based on speculation and conjecture. To withstand
> summary judgment, then, the plaintiff must present evidence that is
> *significantly probative* of a *reasonable opportunity* for access.

*Id.* at 503 (cleaned up). Access may be shown if a third party with possession of a plaintiff's work

was concurrently dealing with the copyright owner and alleged infringer. *Am. Registry of

Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 704-05 (W.D. Tex. 2013).

4

Having carefully considered the entire record, the Court finds that Johnston has presented no probative evidence that Defendants had a reasonable opportunity to hear Plaintiff's Work. All four members of Nickelback who created the allegedly infringing work *Rockstar* aver that, before this litigation, they never heard of Johnston or his band and never heard Plaintiff's Work or received a copy of it from Roadrunner or any other source. Adair Dec. ¶ 4, Dkt. 59-1 at 33; Kroeger Dec. ¶ 5, *id.* at 41; Peake Dec. ¶ 6, *id.* at 45; Turton (p/k/a Chad Kroeger) Dec. ¶¶ 18, 21-30, *id.* at 57-59.

Although Johnston presents no probative evidence that any member of Nickelback ever heard Plaintiff's Work or any other song by Snowblind, he argues that his evidence "establishes a reasonable opportunity to view his work via access from third parties." Dkt. 61 at 20.

> Snowblind and Nickelback were trying to establish themselves around the same time frame, and engaged within the same circles of the industry in order to do so. Both bands performed at the Continental Club and the Whisky-a-Go-Go, venues which were well known to members of the record industry as places to find new music and new talent. Both relied on their industry contacts to make inquiries on their behalf – Nickelback's lawyers provided their music to Jan Steedman, an unknown figure in the industry, who then sent it to Ron Burman at Roadrunner. Similarly, Eric Pulido was working at Universal and made certain that Snowblind's music was introduced with Universal's primary A/R [Artist & Repertoire] executive, Tom Mackay.

*Id.* at 20-21. This argument for access via third parties is purely speculative, but even so, it overstates Johnston's evidence.

As evidence of access by Defendants and Roadrunner's parent Universal Music Group,[1] Johnston submits evidence that CDs including Plaintiff's Work and three other original songs were sent to representatives at certain labels, including but not limited to Warner Music Group and Universal. Johnston Dec. ¶ 4, Dkt. 61-1 at 43; Johnston Tr. at 103:23-104:1, Dkt. 59-1 at 85-86.

---

[1] From 2001 to 2006, Island Def Jam owned a stake in Defendant Roadrunner Records, and Island Def Jam's ultimate corporate parent was Universal Music Group. *See* Rath Dec. ¶ 2, Dkt. 59-1 at 48-49; Dkt. 61-1 at 52 (stating that "Island Def Jam is one of Universal's four major divisions"), 53.

Johnston testified at deposition that an Artist & Repertoire representative from Roadrunner whose name he could not recall told him he had listened to the demo CD. Johnston Tr. at 174:18-177:12, Dkt. 61-1 at 249-52.

Johnston also submits evidence that, in August 2001, Snowblind performed a show at the Continental Club in New York arranged by Eric Pulido, a friend of his working as a summer marketing intern at Universal/Motown Records during college. Johnston Dec. ¶ 2, *id.* at 47. Johnston states: "I also believe that representatives from Epic and Universal Music Group attended the show. I also had a conversation with an individual at Roadrunner Records regarding the show, and I sent a copy of Snowblind's music including the demo CD containing my work *Rock Star* to the A/R Department at the label." *Id.* ¶ 3. Pulido shared Snowblind's press kit with employees in Universal's media marketing department, booked and attended the show, and "tried to get people to come out." Pulido Tr. at 95:23-96:5, 104:23-109:15, Dkt. 59-1 at 208-09, Dkt. 61-1 at 152-56. But the three Roadrunner executives identified by Johnston, two of whom worked with Nickelback, testified that they never heard of Johnston or Snowblind before this lawsuit and never shared Snowblind's demo CD or any of its music with Nickelback. Burman Decl. ¶¶ 8-9, Dkt. 59-1 at 38; Rath Decl. ¶¶ 8-9, *id.* at 50-51; Estrada Tr. at 49:3-50:13, 53:17-54:3, *id.* at 223-27.

Viewed in the light most favorable to him, Johnston's evidence at most demonstrates a "bare possibility of access." Johnston offers no significantly probative evidence that any of Defendants' executives actually heard Plaintiff's Work, much less shared it with Nickelback.

Defendants have demonstrated that Johnston lacks evidence supporting access to Plaintiff's Work by Nickelback. Because Johnston has not created a genuine issue of material fact as to access to Plaintiff's Work, the Court concludes that his evidence of access is insufficient to withstand summary judgment.

### C.  Striking Similarity

Without proof of access, Johnston must prove factual copying by showing "striking similarity" between the two works. *Batiste*, 976 F.3d at 504. "To meet that burden, he must point to 'similarities . . . that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'" *Id.* (quoting *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1039 (5th Cir. 2015)).

Johnston alleges that "a substantial amount of the music in *Rockstar* is copied from [his] original composition *Rock Star*," including "substantial portions of the tempo, song form, melodic structure, harmonic structures, and lyrical themes" Dkt. 1 ¶ 23. Johnston also alleges that "[t]he musical and lyrical themes of Nickelback's *Rockstar* is substantially, strikingly similar to Johnston's *Rock Star*. The portions copied are both quantitatively and qualitatively substantial to copyrightable elements of Johnston's *Rock Star*, individually and in combination." *Id.* ¶ 25.

Johnston submits expert and rebuttal reports from Dr. Kevin Mooney, a musicologist, Senior Lecturer of music history at Texas State University, and performing guitarist. Dkt. 61-1 at 277, 295. Mooney states in the summary of conclusions to his expert report:

> I believe that a jury will find the similarities between Rock Star and Rockstar are substantial and significant. From a musicological perspective, it is my opinion that the jury will hear similarities that are most evidence in tempo, melodic structure, harmonic structure, rhythmic structure, and lyrics between the two songs. In particular, the signature phrase of the two songs, also known as the hook, is substantially identical both melodically and lyrically.

Dkt. 61-1 at 277. Mooney subsequently prepared a declaration in support of Johnston's opposition to Defendants' summary judgment motion, in which he opines for the first time that the "hooks" of the two songs are strikingly similar:

> It is also my opinion as a trained musicology expert that the specific combination of melodic characteristics in the hooks of both songs can only be explained by copying. I believe that the aggregation of <u>unique</u>

> melodic choices made by Nickelback simply could not have been made
> independently or coincidentally. I understand that this factual predicate
> results in what is legally referred to as "striking similarity."

*Id.* at 258. The "hooks" to which Mooney refers are "gonna be a rock star someday" (repeated nine

times) in Plaintiff's Work, and "hey, hey, I wanna be a rockstar" (repeated five times) in

Nickelback's Work. Moody opines that the two hooks contain eight specific melodic similarities.

Defendants submit the expert report of Dr. Lawrence Ferrara, a Professor of Music at New

York University and Director Emeritus of all studies in Music and the Performing Arts in NYU's

Steinhardt School. Dkt. 59-1 at 310. Ferrara opines that any similarities between the two songs

"are commonplace, coincidental, unremarkable, and not remotely suggestive of copying." Dkt. 59-

1 at 450. Specifically:

> On the basis of my analysis of the constituent elements in [Plaintiff's
> Work] "Johnston" and [Nickelback's Work] "Nickelback"
> individually, in the aggregate, and within the context of prior art, I
> found that there are no significant structural, harmonic, rhythmic,
> melodic, or lyrical similarities between "Johnston" and "Nickelback",
> and no musicological evidence suggesting that any expression in
> "Nickelback" was copied from "Johnston".

*Id.* at 449. Ferrara finds that Nickelback's own body of songs predating Plaintiff's Work "includes

numerous musical and lyrical 'fingerprints' that are also used in Nickelback's 2005 'Rockstar,'"

*id.* at 311, including many musical aspects of the hook in Nickelback's Work. Ferrara concludes

that any similar melodic elements between the parties' songs "are fragmentary, commonplace,

often in Nickelback's own songs that predate August 2001, and not even barely indicative of

copying." *Id.* at 382.

Plaintiff's expert evidence does not foreclose the conclusion that Nickelback's Work was

created independently of Plaintiff's Work. *Landry v. Atl. Recording Corp.*, No. 04-2794, 2007 WL

4302074, at *7 (E.D. La. Dec. 4, 2007). The Court has conducted a side-by-side examination of

the works, carefully listening to and considering all versions of the songs of record. Viewing the

evidence and drawing inferences in a manner most favorable to Johnston, the evidence does not establish that the songs are strikingly similar. As an "ordinary listener," the Court concludes that a layman would not consider the songs or even their "hooks" to be strikingly similar. *Id.* (citing *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005)). Stated simply, they do not sound alike.

As for the lyrics, Johnston's expert identifies "eight specific and substantially similar traits characteristic of life as a rock star." Dkt. 61-1 at 260-61. The Court considers all of the lyrics in the two songs concerning each of the "traits" identified by Mooney.

| Plaintiff's Work | Nickelback's Work |
|---|---|
| **1.   "Becoming a rock star"** | |
| "Gonna be a rock star someday" | "Cause we all just want to be big rock stars"; "Well, we all just wanna be big rock stars"; "Hey, hey, I wanna be a rockstar |
| **2.   "A tour bus"** | |
| "Gonna ride the tour bus because I don't like jet planes" | "I want a new tour bus full of old guitars" |
| **3.   "Making lots of money"** | |
| "Gonna make lots of money" | "I'll need a credit card that's got no limit'"; "I'm gonna trade this life for fortune and fame"; "And live in hilltop houses, driving fifteen cars" |
| **4.   "Live life in the fast lane"** | |
| "Live life in the fast lane" | "Gonna join the mile high club at thirty-seven thousand feet"; "The girls come easy and the drugs come cheap"; "Everybody's got a drug dealer on speed dial" |
| **5.   "Gaining access to Hollywood"** | |
| "Gonna hang out at Hollywood parties with Matthew McConaughey" | "My own star on Hollywood Boulevard"; "And we'll hang out in the coolest bars"; "Get a front-door key to the Playboy mansion" |
| **6.   "Connections with famous people"** | |
| "Gonna have lots of friends like Robert Plant and Jimmy Page" | "Somewhere between Cher and James Dean is fine for me"; "In the V.I.P. with the movie stars"; "Gonna date a centerfold that loves to blow my money for me"; "With the latest dictionary of today's who's who" |

| Plaintiff's Work | Nickelback's Work |
|---|---|
| **7.  "Things to buy"** | |
| "Might buy the Cowboys and that's how I'll spend my Sundays" | "I want a brand new house on an episode of Cribs"; "And a king-size tub big enough for ten plus me"; "And a big black jet with a bathroom in it" |
| **8.  "Reference to sports"** | |
| "Might buy the Cowboys and that's how I'll spend my Sundays" | "It's like the bottom of the ninth and I'm never gonna win"; "And a bathroom I can play baseball in" |

Dkt. 61-1 at 261-62, 329-34.[2]

Nickelback's expert opines that the "rock star" lyrical theme in both songs "was in common use and widely available" before Plaintiff's Work was created, and that "[m]any songs dealing with this theme also share more specific lyrical similarities" with one or both songs. Dkt. 59-1 at 352. Ferrara compares the lyrics in 17 such songs, from "So You Want To Be A Rock And Roll Star" by The Byrds in 1966 to "Rockstar" by Poison in 2001. *Id.* at 352-66. Plaintiff's expert also submits a chart demonstrating that many of the contemporary rock songs Ferrara identifies share similar lyrical themes. *See* Dkt. 61-1 at 384.

Mooney's assertion that some of the lyrics in the two songs are substantially similar borders on the absurd. This includes, for example, any suggestion that the two baseball analogies in Nickelback's Work are evidence that the band copied Johnston's lyric "might buy the Cowboys" professional football team simply because both are "references to sports." But even accepting all of the shared lyrical "traits" as described by Johnston's expert, the Court concludes that they are not evidence of striking similarity between the two songs.

---

[2] The full lyrics to both songs are included in an Appendix to this Report and Recommendation.

The lyrics of both songs comprise *scènes à faire*[3] of "outlandish stereotypes and images associated with being a huge, famous, rock star," as described by Nickelback lead singer Chad Turton (professionally known as Chad Kroeger), principal author of *Rockstar*. Turton Dec. ¶ 11, Dkt. 59-1 at 55. Turton avers that Nickelback's brainstorming session to write the *Rockstar* lyrics "was hours of spitting out ridiculous things that our imagined rock star would want; the ideas that made us smile or laugh the most ultimately made it into the song." *Id.*

Where both songs evoke similar themes, they are rendered dissimilar through the vivid detail of the original expression in Nickelback's lyrics. So while Nickelback's lyrics "Gonna join the mile high club at thirty-seven thousand feet"; "The girls come easy and the drugs come cheap"; and "Everybody's got a drug dealer on speed dial" evoke the timeworn trope of sex, drugs, and rock 'n roll, they are not similar to Johnston's naked lyrical longing to "Live life in the fast lane." Johnston fails to raise a fact issue as to striking similarity between the two songs.

**D. Conclusion**

Johnston raises no fact issue of access or striking similarity and so has not shown that there is a genuine dispute for trial as to factual copying. Factual copying is an element essential to his copyright infringement case, on which he would bear the burden of proof at trial. Because Johnston fails to raise a genuine issue of material fact as to factual copying, he cannot establish copyright infringement as a matter of law. This Magistrate Judge therefore recommends that the District Court grant Defendants' motion for summary judgment.

---

[3] Ideas are not protectable in copyright; only particular expressions of ideas may be protected. *Busti v. Platinum Studios, Inc.*, No. A-11-CA-1029-SS, 2013 WL 12121116, at *6 (W.D. Tex. Aug. 30, 2013) (citing 17 U.S.C. § 102(b)). "Scenes a faire," including "expressions that are standard, stock or common to a particular subject matter," are not subject to copyright. *Id.*; *see also Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1058 (C.D. Cal. 2018) (stating that "scènes à faire—stock or standard features that are commonly associated with the treatment of a given subject—are unprotectable"); *Brainard v. Vassar*, 625 F. Supp. 2d 608, 619 (M.D. Tenn. 2009) ("In any country song discussing the past and future 'good old days,' the subjects of drinking, socializing, and courting are clearly *scenes a faire*.").

### IV.    Order on Evidentiary Objections and Defendants' Motion to Strike

Johnston objects to Defendants' "Statement of Undisputed Facts," which he contends "were not discussed or agreed upon by all parties and essentially amounts to an additional 25 pages of briefing and argument disguised as Appendix materials." Dkt. 61 at 5-6. The Court hereby **SUSTAINS** Johnston's objection and has given no consideration to Defendants' "Statement of Undisputed Facts."

Defendants, in turn, submit a motion to strike and 16 pages of evidentiary objections to Johnston's summary judgment evidence. Dkt. 64-2. In view of the Court's recommendation, Defendants' objections are **OVERRULED** and their motion to strike **DENIED AS MOOT**.

### V.    Recommendation

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants Chad Kroeger, Michael Kroger, Ryan Peake, Daniel Adair, Roadrunner Records, Inc., and Warner Chappell Music, Inc.'s Motion for Summary Judgment (Dkt. 59); **DENY AS MOOT** Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Statute of Limitations and Application of the Discovery Rule to Plaintiff's Damages (Dkt. 58); and **DISMISS** Plaintiff's claim with prejudice.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

### VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on February 15, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

**Appendix**

| Plaintiff's Work *Rock Star* | Nickelback's Work *Rockstar* |
|---|---|
| **Verse 1** | **Verse 1** |
| Gonna be a rock star, someday | I'm through with standin' in line to clubs I'll never get in, |
| Gonna ride the tour bus because I don't like jet planes | It's like the bottom of the ninth and I'm never gonna win. |
| Gonna make lots of money; live life in the fast lane. | This life hasn't turned out |
| Gonna be a rock star someday. | Quite the way I want it to be. |
| **Verse 2** | (Tell me what you want.) |
| Gonna be a rock star someday | I want a brand-new house on an episode of Cribs, |
| Gonna have lots of friends like Robert Plant and Jimmy Page | And a bathroom I can play baseball in. |
| Gonna make my family proud, I'm gonna stand up strong gonna sing it loud | And a king-size tub |
| Gonna be a rock star someday. | Big enough for ten plus me. |
| **Verse 3** | (Go for what you need.) |
| Gonna be a rock star someday | I'll need a credit card that's got no limit |
| Gonna hang out at Hollywood parties with Matthew McConaughey. | And a big black jet with a bathroom in it. |
| Might buy the Cowboys and that's how I'll spend my Sundays. | Gonna join the mile high club |
| Gonna be a rock star someday. | At thirty-seven thousand feet. |
| **Repeat Verse 1** | (Been there, done that.) |
| Gonna be a rock star someday | I want a new tour bus full of old guitars, |
| | My own star on Hollywood Boulevard. |
| | Somewhere between Cher |
| | And James Dean is fine for me. |
| | (So, how you gonna do it?) |
| | **Pre-Chorus** |
| | I'm gonna trade this life |
| | For fortune and fame, |
| | I'd even cut my hair |
| | And change my name. |

| Plaintiff's Work *Rock Star* | Nickelback's Work *Rockstar* |
|---|---|
| | **Chorus 1** |
| | 'Cause we all just wanna be big rock stars |
| | And live in hilltop houses, driving fifteen cars. |
| | The girls come easy and the drugs come cheap. |
| | We'll all stay skinny 'cause we just won't eat. |
| | And we'll hang out in the coolest bars, |
| | In the V.I.P. with the movie stars. |
| | Ev'ry good gold digger's gonna wind up there, |
| | Ev'ry Playboy bunny with her bleach blond hair. |
| | And we'll . . . Hey, hey, I wanna be a rockstar. |
| | Hey, hey, I wanna be a rockstar. |
| | **Verse 2** |
| | I wanna be great like Elvis, without the tassels. |
| | Hire eight body guards who love to beat up assholes. |
| | Sign a couple autographs |
| | So I can eat my meals for free. |
| | (I'll have the quesadilla, ha, ha.) |
| | I'm gonna dress my ass with the latest fashion, |
| | Get a front-door key to the Playboy mansion. |
| | Gonna date a centerfold that loves |
| | To blow my money for me |
| | (So, how you gonna do it?) |
| | **Repeat Pre-Chorus** |
| | **Chorus 2** |
| | 'Cause we all just wanna be big rockstars |
| | And live in hilltop houses, driving fifteen cars. |
| | The girls come easy and the drugs come cheap. |
| | We'll all stay skinny 'cause we just won't eat. |
| | And we'll hang out in the coolest bars |
| | In the V.I.P. with the movie stars. |
| | Every good gold digger's gonna wind up there, |

| Plaintiff's Work *Rock Star* | Nickelback's Work *Rockstar* |
|---|---|
| | Every Playboy bunny with her bleach blond hair. |
| | And we'll hide out in the private rooms |
| | With the latest dictionary of today's who's who. |
| | They'll get you anything with that evil smile. |
| | Everybody's got a drug dealer on speed dial. |
| | Hey, hey, I wanna be a rockstar. |
| | **Bridge** |
| | I'm gonna sing those songs that offend the censors. |
| | Gonna pop my pills from a Pez dispenser. |
| | Get washed-up singers writing all my songs. |
| | Lip sync 'em every night so I don't get 'em wrong. |
| | **Chorus 3** |
| | Well, we all just wanna be big rockstars |
| | And live in hilltop houses, driving fifteen cars. |
| | The girls come easy and the drugs come cheap. |
| | We'll all stay skinny 'cause we just won't eat. |
| | And we'll hang out in the coolest bars |
| | In the VIP with the movie stars. |
| | Ev'ry good gold digger's gonna wind up there, |
| | Ev'ry Playboy bunny with her bleach-blond hair. |
| | And we'll hide out in the private rooms, |
| | With the latest dictionary of today's who's who. |
| | They'll get you anything with that evil smile. |
| | Everybody's got a drug dealer on speed dial. |
| | Hey, hey, I wanna be a rockstar |
| | Hey, hey, I wanna be a rockstar |

Dkt. 59-1 at 461-66; Dkt. 61-1 at 329-34.